WILLIAM A. MERRIFIELD, Plaintiff-Appellee, v. ILLINOIS STATE POLICE MERIT BOARD *et al.*, Defendants-Appellants.

Fourth District   No. 4—97—0391

Argued November 19, 1997.—Opinion filed December 30, 1997.

James E. Ryan, Attorney General, of Chicago (Barbara A. Preiner, Solicitor General, and Marcia L. McCormick (argued), Assistant Attorney General, of counsel), for appellants.

Richard H. Narup and Matthew D. Bilinsky (argued), both of Drake, Narup & Mead, P.C., of Springfield, for appellee.

JUSTICE STEIGMANN delivered the opinion of the court:

In March 1991, defendant Illinois State Police Merit Board (Board) found that plaintiff, William A. Merrifield, had violated certain rules of conduct prescribed by defendant Illinois State Police (Department) and, on this basis, terminated his employment as a state police officer. In April 1991, Merrifield filed a complaint for administrative review of the Board's decision. In December 1995, the circuit court upheld the Board's decision. Merrifield subsequently filed a motion for reconsideration, and in January 1996, the circuit court affirmed the Board's ruling in part, reversed it in part, and remanded the matter for further consideration.

In June 1996, the Board issued an order reaffirming its prior decision. Merrifield filed a second complaint for administrative review in July 1996. In April 1997, the circuit court reversed the Board's ruling on one of the violations and, with respect to the other violations, determined that suspension—rather than discharge—was the appropriate sanction.

The Board appeals, arguing that the circuit court erred by reversing the Board's decision in part and imposing its own sanction where the evidence was sufficient to support Merrifield's dismissal. For the following reasons, we reverse the circuit court and reinstate the Board's June 1996 decision.

# I. BACKGROUND

## A. The Department's Complaint

In August 1990, the Director of the Department filed a four-count complaint with the Board requesting Merrifield's discharge for cause. Count I alleged that Merrifield's association with Brenda Houston, a convicted felon, violated Rule 21 of the Department's rules of conduct, which provides:

> "Except as necessary to the performance of official duties, or where unavoidable because of other family relationships of the officer, officers will avoid regular or continuous associations or dealings with persons whom they know, or should know, are persons under criminal investigation or indictment, or who have a reputation in the community or the [D]epartment for present or past involvement in felonious or criminal behavior." Illinois State Police Directives Manual § ROC—002, Rules of Conduct, Rule 21 (1996).

Count II and paragraphs 14 and 15 of count III alleged that Merrifield lied to his immediate supervisor and to investigating officers in violation of Rules 41 and 42, respectively. Rule 41 provides as follows:

> "Upon the order of the director, deputy director or a superior officer, officers will truthfully answer all questions specifically directed and narrowly related to the scope of employment and operations of the [D]epartment which may be asked of them." Illinois State Police Directives Manual § ROC—002, Rules of Conduct, Rule 41 (1996).

Rule 42 states:

> "Officers are required to answer questions by, or render material and relevant statements to, competent authority in a [D]epartment personnel investigation when said officer, prior to the interrogation[,] has been advised of his statutory administrative proceedings rights if the allegation indicates a recommendation for a demotion, suspension of more than 15 days or removal or discharge is probable, and/or his constitutional rights concerning self-incrimination if the allegation indicates that criminal prosecution is probable against that officer." Illinois State Police Directives Manual § ROC—002, Rules of Conduct, Rule 42 (1996).

Finally, count IV (misnumbered count VI in the complaint) alleged that Merrifield's aforementioned conduct constituted conduct unbecoming an officer in violation of Rule 7, which provides:

> "Officers will conduct themselves on and off duty in such a manner as to reflect favorably on the [D]epartment. Officers will not engage in conduct which discredits the integrity of the [D]epartment or its employees, or which impairs the operations of the

Department. Such actions will constitute conduct unbecoming an officer." Illinois State Police Directives Manual § ROC—002, Rules of Conduct, Rule 7 (1996).

## B. The Evidence Presented at the Board Hearing

In October 1990, a hearing officer serving on behalf of the Board held a hearing on the Director's complaint. The evidence presented during that proceeding showed the following.

Since March 1975, Merrifield had been an Illinois state police officer assigned to the District 9 office in Springfield, Illinois. Merrifield and Houston met in May 1988 and shortly thereafter began dating. Previously, in February 1988, Houston had pleaded guilty to and was convicted in Michigan of the "delivery/manufacture" of between 225 and 649 grams of cocaine and, in July 1988, she was sentenced to 10 to 30 years in the Michigan Department of Corrections. In September 1989, the Michigan Appellate Court affirmed her conviction, and in May 1990, the Michigan Supreme Court denied her leave to appeal.

Houston began serving her sentence at the Kalamazoo County jail in early August 1988. Prior to this time, Merrifield had no knowledge of either Houston's conviction or sentence. Shortly after arriving at the jail, Houston called Merrifield and informed him that she was incarcerated. Merrifield asked Houston why she was in jail but Houston did not provide a specific explanation. Rather, Houston told Merrifield only that she had "gotten in some trouble."

In late August 1988, Houston was transferred to the Huron Valley Women's Facility in Ypsilanti, Michigan. Houston called Merrifield at that time and informed him of her transfer. In addition, Houston told Merrifield that she was in prison because she had been convicted of the delivery of a controlled substance.

Between August 1988 and May 1989, Merrifield visited Houston at the facility a total of 11 times. During these visits, Merrifield and Houston discussed plans for marriage and, on one occasion, Merrifield asked Houston to marry him. Houston was released from prison in May 1989 pending an appeal of her conviction and returned to Springfield, where she continued her relationship with Merrifield.

In August 1989, special agent Lewis Dillon of the Department's Division of Internal Investigation received a complaint letter from Merrifield's ex-wife alleging Merrifield was associated with a convicted felon—namely, Houston. Dillon checked Houston's criminal history, which confirmed she had a felony drug conviction in Michigan. Pursuant to the letter and criminal check, the Department, headed by Master Sergeant Jerry Courtney and Dillon, commenced an internal investigation of Merrifield's relationship with Houston.

The following occurred on or about November 2, 1989. Kim Frick, an Illinois state trooper working with Merrifield at District 9 office, received a telephone call from Houston. Frick later telephoned Houston at Merrifield's residence, and during the course of their conversation, Houston became angry with Frick. As a result, Frick felt threatened and feared retaliation. Frick's fears stemmed from a warning about Houston that Frick received in September or October 1989 from Mike Luster, a special agent with the Department's Division of Criminal Investigation, who knew of Houston's prior incarceration. Frick subsequently checked Houston's criminal history, which revealed the drug conviction. Frick told Ed Eskra, one of her supervisors, about the phone conversation and gave him a copy of Houston's criminal record. Eskra discussed Frick's phone call and Houston's criminal record with Merrifield's supervisor, Fred McKinnon. Eskra and McKinnon thereafter discussed the situation with Lieutenants Straub and Entman. At this time, Eskra and McKinnon were informed of the Department's internal investigation of Merrifield and Houston.

During the first week of November 1989, McKinnon met with Merrifield to discuss the situation between Frick and Houston and Houston's criminal history. During the meeting, McKinnon showed Merrifield a copy of Houston's criminal record and informed Merrifield of Houston's prior conviction. Merrifield told McKinnon that he was not aware of Houston's particular conviction or the nature of her sentence. He further told McKinnon that he knew only that Houston had had "some prior trouble."

McKinnon also testified that, after discussing Houston's criminal history, Merrifield stated that he had cancelled his wedding plans and Houston was moving out of his house. Merrifield later denied making these statements but testified that he may have implied to McKinnon that he did not intend to marry Houston.

The record indicates that at the time of McKinnon's meeting with Merrifield in November 1989, the following employees of the Department knew of Houston's criminal conviction: Courtney, Dillon, Frick, Frick's brother (also a state police officer), Luster, Eskra, McKinnon, Straub, Entman, special agent Latham, and state trooper Sturgeon.

On November 25, 1989, Merrifield and Houston were married in Las Vegas, Nevada. The wedding was scheduled approximately a month before this date. Merrifield and Houston remained married at the time of Merrifield's hearing.

Sometime after his marriage, Courtney and Dillon interviewed Merrifield in connection with the Department's internal investiga-

tion. They advised Merrifield of his administrative rights and admonished him to tell the truth. In pertinent part, Merrifield told the investigators that (1) he was not fully aware of the criminal case against Houston; (2) he had told McKinnon that he was unaware of Houston's prior drug conviction; and (3) Houston never lived with him. He denied telling McKinnon he and Houston had cancelled their wedding plans.

Based on his prior investigative experience and Merrifield's demeanor, Courtney testified he believed Merrifield lied during the interview. Merrifield, on the other hand, denied lying and stated any evasiveness in the interview was due to his attempt to carefully answer the investigators' questions.

## C. The Hearing Officer's Findings and the Board's 1991 Decision

In February 1991, the hearing officer determined that the Department failed to prove by a preponderance of the evidence Merrifield's violations of Rule 21 in count I, Rule 41 in count II and Rule 42 in paragraph 14 of count III, but determined the Department sufficiently demonstrated violations of Rule 42 in paragraph 15 of count III and Rule 7 in count IV. In relevant part, the hearing officer found that Houston was not a person "under criminal investigation or indictment" or with a "reputation in the community or the Department for present or past involvement in felonious or criminal behavior." Accordingly, the hearing officer concluded Merrifield's relationship with Houston did not violate Rule 21.

In addition, the hearing officer found Merrifield lied when he told McKinnon that he no longer intended to marry Houston and that Houston was moving out of his house. However, because the evidence did not show that Merrifield had been ordered to answer the questions posed by McKinnon as required by Rule 41, the hearing officer found no rule violation. Thus, the hearing officer concluded the Department failed to prove count II of the complaint. Furthermore, the hearing officer found Merrifield lied to Courtney and Dillon about his discussions with McKinnon. Thus, the hearing officer concluded that the Department adequately demonstrated a Rule 42 violation in count III. The hearing officer also determined that Merrifield's lies to McKinnon and to investigating officers Courtney and Dillon constituted conduct unbecoming an officer in violation of Rule 7 and found that the Board established the allegations of count IV. The hearing officer did not recommend an appropriate sanction.

The Board considered the hearing officer's recommendations and issued a decision in March 1991. Contrary to some of the hearing's officer's determinations, the Board concluded the Department had suf-

ficiently proved all charges of the complaint and ordered Merrifield's employment terminated. Merrifield filed a complaint for administrative review, and the circuit court remanded the matter, directing the Board to issue a decision detailing its specific findings of fact and conclusions of law.

## D. The Board's 1996 Decision and the Circuit Court's 1997 Ruling

In June 1996, the Board issued a new decision adopting the hearing officer's findings of fact and conclusions of law to the extent they did not conflict with the matters set forth in the new ruling. The Board determined that (1) Houston's then-pending appeal was a logical extension of a criminal investigation; (2) Merrifield lied to McKinnon and Courtney; and (3) the evidence was sufficient to show that Houston had a criminal reputation in the Department because at least four departmental employees knew of her prior drug conviction; thus, Merrifield violated Rule 21. The Board concluded Merrifield's relationship with Houston and his untruthfulness tended to discredit the integrity of the Department and impair its operations in violation of Rule 7. On this basis, the Board ordered Merrifield discharged.

In July 1996, Merrifield filed a second complaint for administrative review and, in April 1997, the circuit court affirmed the Board's decision in part and reversed it in part. The circuit court's order explicitly rejected the Board's finding that an appeal is an extension of a criminal investigation. The circuit court also determined that the knowledge of Houston's conviction by four departmental employees was insufficient to establish a criminal reputation. Accordingly, the circuit court concluded Merrifield's association with Houston did not violate Rule 21. The circuit court further determined that because Houston did not have a public reputation for criminal behavior, Merrifield's relationship with her could not reflect badly on the Department. Thus, Merrifield had not violated Rule 7.

The circuit court upheld the Board's finding that Merrifield lied to investigators in violation of Rule 42, but concluded that this single incident of misconduct did not warrant Merrifield's termination. The circuit court imposed a suspension of 30 days on Merrifield and ordered him reinstated effective 30 days after the Board's March 1991 ruling.

## II. ANALYSIS

### A. The Board's Motion To Strike

Initially, we address the Board's motion to strike, which was taken with this case. In its motion, the Board argues that Merrifield's brief fails to comply with Supreme Court Rule 341 (155 Ill. 2d R. 341)

because its factual statement is not fully supported by the record and improperly contains argumentative and conclusory assertions. The Board requests that we strike Merrifield's statement of facts in its entirety.

■ Although Merrifield was not required to include a statement of facts in his brief (see 155 Ill. 2d R. 341(f)), he elected to do so. Accordingly, his brief needed to comply with Supreme Court Rule 341(e)(6), which requires a party to cite facts "necessary to an understanding of the case, stated accurately and fairly without argument or comment, and [supported by] appropriate reference to the pages of the record on appeal." 155 Ill. 2d R. 341(e)(6). The Board is correct that Merrifield's recitation of the facts contains improper argument and fails to accurately portray the evidence presented at the hearing. Nevertheless, the remaining portions of Merrifield's factual statement comply with Rule 341(e)(6). Where violations of supreme court rules are not so flagrant as to hinder or preclude review, the striking of a brief in whole or in part may be unwarranted. *Cottrill v. Russell*, 253 Ill. App. 3d 934, 938, 625 N.E.2d 888, 890 (1993). Merrifield's improper comments and inaccurate statements are not so misleading as to hinder our analysis. We conclude that Merrifield's properly asserted facts, coupled with the Board's recitations, are sufficient to permit review of the instant appeal. Thus, we do not strike Merrifield's statement in its entirety but will disregard those portions that do not comport with the supreme court rules.

### B. The Board's Decision To Discharge Merrifield

The Board argues that the circuit court erred by reversing the Board's decision in part and imposing its own sanction on Merrifield. The Board specifically contends that the evidence supports its findings that Merrifield violated Rules 21 and 7. The Board further contends that these violations constitute sufficient "cause" for Merrifield's dismissal and requests this court to reverse the circuit court's April 1997 order and reinstate the Board's June 1996 ruling. We agree.

In his brief, Merrifield does not specifically address the issue of whether the evidence supports the Board's ruling. Instead, Merrifield elects to challenge the content of the Board's decision. Merrifield argues that because the decision fails to set forth sufficient factual findings and legal conclusions as required under section 10—50(a) of the Illinois Administrative Procedure Act (Act) (5 ILCS 100/10—50(a) (West 1994)), its ruling is arbitrary and capricious and, thus, cannot be sustained on review.

### 1. *Adequacy of Board's 1996 Decision Under the Act*

■ Contrary to Merrifield's assertion, the Board's decision is not arbitrary and capricious. Section 10—50 of the Act governs the decisions and orders of administrative agencies and directs, in pertinent part, that an agency's decision "shall include findings of fact and conclusions of law, separately stated." 5 ILCS 100/10—50(a) (West 1994). An agency is not required to make a finding on each evidentiary claim, and its findings need be only specific enough to permit an intelligent review of its decision. *United Cities Gas Co. v. Illinois Commerce Comm'n*, 235 Ill. App. 3d 577, 586, 601 N.E.2d 1014, 1019 (1992). The Board explicitly adopted the factual findings and legal conclusions of the hearing officer to the extent they did not conflict with its June 1996 decision. The Board further explained its findings and conclusions where they diverged from those of the hearing officer. Because we deem the Board's findings and conclusions sufficient to permit an intelligent review of its ruling, we conclude the Board's June 1996 decision satisfies the mandates of section 10—50(a) of the Act (5 ILCS 100/10—50(a) (West 1994)).

### 2. *The Board's June 1996 Decision*

■ Our review of the Board's decision to discharge Merrifield involves a two-step process. We must first determine whether the Board's findings are against the manifest weight of the evidence. *Walsh v. Board of Fire & Police Commissioners*, 96 Ill. 2d 101, 105, 449 N.E.2d 115, 117 (1983). The findings of the Board are deemed *prima facie* true and correct (735 ILCS 5/3—110 (West 1996)), and a reviewing court will not reweigh the evidence or make an independent determination of the facts (*Grames v. Illinois State Police*, 254 Ill. App. 3d 191, 202, 625 N.E.2d 945, 954 (1993)). Likewise, the assessment of witness credibility, the determination of the weight accorded to the testimony, and the inferences to be drawn from the evidence are matters within the province of the agency. *Parro v. Industrial Comm'n*, 167 Ill. 2d 385, 396, 657 N.E.2d 882, 887 (1995). A reviewing court is limited to ascertaining whether an opposite conclusion is clearly evident from the record or whether the agency's findings are unreasonable, arbitrary, and not based upon any of the evidence. *Illini Country Club v. Property Tax Appeal Board*, 263 Ill. App. 3d 410, 417, 635 N.E.2d 1347, 1353 (1994). If the record contains any competent evidence to support the agency's findings, the decision must be sustained on review. *Illini Country Club*, 263 Ill. App. 3d at 417, 635 N.E.2d at 1353.

■ We conclude that the record contains evidence sufficient to support the Board's findings. Although the Board's assertion that a

"criminal investigation" encompasses a pending appeal is troublesome, the record supports the Board's determination that Houston had a criminal reputation within the Department. The Board found that at least four individuals within the Department knew of Houston's drug conviction at the time the Director filed the complaint in August 1990. In fact, the record indicates that at least 11 state police officers in the Springfield area knew of Houston's criminal past at that time. The Board could have reasonably concluded that the knowledge of Houston's criminal reputation by at least four departmental personnel sufficed for purposes of Rule 21.

Moreover, the Board's determination that Merrifield's association with Houston and his lies about it tended to discredit the Department and impair its operations was not unreasonable. Merrifield maintained a regular and continuous relationship with an individual he knew was a convicted criminal. As the Board contends, this relationship may foster several problems within a law enforcement agency, such as creating conflicts of interest or the appearance of impropriety, and, thus, may serve as the basis for a Rule 7 violation. In addition, an officer's untruthfulness clearly discredits the integrity and thwarts the efficiency of the Department, particularly where, as in this case, an officer lies during the course of a departmental investigation.

The Board, and not a reviewing court, is in the best position to assess how an officer's conduct affects the Department's operations, and a reviewing court may not simply reweigh the evidence and substitute its own judgment for that of the Board. See *United Cities Gas*, 235 Ill. App. 3d at 586, 601 N.E.2d at 1017 (agency decisions are "entitled to great weight as being the judgment of a tribunal appointed by law and informed by experience"). The circuit court erred by concluding that Merrifield's conduct could not adversely affect the Department. The Board acted reasonably in determining Merrifield's conduct was unbecoming an officer in violation of Rule 7. Based on the above, we cannot conclude the Board's findings are against the manifest weight of the evidence.

The second step in the analysis is to determine whether the factual findings are sufficient to support the Board's conclusion that "cause" exists for Merrifield's discharge. *Walsh*, 96 Ill. 2d at 105, 449 N.E.2d at 117. An officer with the Department may be removed only for "cause" (Ill. Rev. Stat. 1991, ch. 121, par. 307.14 (now 20 ILCS 2610/14 (West 1994))), which has been judicially defined as " 'some substantial shortcoming which renders the employee's continuance in office in some way detrimental to the discipline and efficiency of the service and which the law and sound public opinion recognize as

good cause for his no longer holding the position.' " *Grames*, 254 Ill. App. 3d at 205, 625 N.E.2d at 956, quoting *Department of Mental Health & Developmental Disabilities v. Civil Services Comm'n*, 85 Ill. 2d 547, 551, 426 N.E.2d 885, 887 (1981). Again, because the Board is in the best position to determine the effect of the officer's conduct on the operations of the Department, its determination of "cause" will be given considerable deference. *Grames*, 254 Ill. App. 3d at 205, 625 N.E.2d at 956. A reviewing court will not decide whether a less stringent punishment is appropriate and will overturn the Board's decision only if it is arbitrary and unreasonable or unrelated to the requirements of service. *Walsh*, 96 Ill. 2d at 105-06, 449 N.E.2d at 117.

The Board found sufficient reason to terminate Merrifield's employment with the Department. As the record demonstrates, Merrifield violated certain departmental rules of conduct when he chose to have a close personal association with a convicted felon and again when he lied to his supervisor and later to investigators about the status of that relationship. The Board determined the operations and integrity of the Department would be adversely affected by Merrifield's conduct and could reasonably have determined that this conduct reflects a significant shortcoming that renders Merrifield's continued employment detrimental to the discipline and efficiency of the Department. See *McHenry v. City of East St. Louis*, 210 Ill. App. 3d 861, 869, 569 N.E.2d 259, 264 (1991) (upholding board's discharge of police officer who allowed runaway to live with him because such conduct was detrimental to the department's efficiency); *DeGrazio v. Civil Service Comm'n*, 31 Ill. 2d 482, 489, 202 N.E.2d 522, 526-27 (1964) (officer's association with reputed criminal warranted discharge); *Slayton v. Board of Fire & Police Commissioners*, 102 Ill. App. 3d 335, 338-39, 430 N.E.2d 41, 43-44 (1981) (discharge justified where officer lied during police investigation). As this court noted, the Department's officers must uphold its rules. *Grames*, 254 Ill. App. 3d at 205, 625 N.E.2d at 956. Based on the record in this case, the Board could reasonably have concluded that Merrifield's association with Houston, coupled with his lies to departmental personnel, impair this interest.

Merrifield relies on *Bell v. Civil Service Comm'n*, 161 Ill. App. 3d 644, 515 N.E.2d 248 (1987), to support his contention that the Board's order of discharge is arbitrary and capricious. In *Bell*, the court held the commission's decision to discharge an employee who allegedly falsified reports was arbitrary, unreasonable, and unrelated to the needs of service. *Bell*, 161 Ill. App. 3d at 648-50, 515 N.E.2d at 251-52. The court found the employee's errors were due to confusion and

misunderstanding of newly introduced reporting methods and, as such, her conduct could not be deemed detrimental to the discipline and efficiency of the commission. *Bell*, 161 Ill. App. 3d at 649-50, 515 N.E.2d at 251. However, *Bell* is inapposite because the evidence in this case does not indicate Merrifield's violations of the departmental rules were inadvertent. The record adequately demonstrates Merrifield knowingly maintained an ongoing relationship with a convicted felon and deliberately misstated the status of that relationship to fellow officers.

The Board found sufficient "cause" exists to justify Merrifield's discharge, and we cannot say its determination is arbitrary, unreasonable, or unrelated to the requirements of service. Because the record supports the Board's decision, we conclude that the circuit court erred by reversing the Board's decision.

## III. CONCLUSION

For the reasons stated, we reverse the circuit court and reinstate the Board's June 1996 decision.

Reversed; Board's decision reinstated.

GARMAN, P.J., and KNECHT, J., concur.