JOSEPH VALIO, Plaintiff-Appellee, v. THE BOARD OF FIRE AND POLICE COMMISSIONERS OF THE VILLAGE OF ITASCA *et al.*, Defendants-Appellants.

Second District   No. 2—99—0019

Opinion filed February 3, 2000.

Charles E. Hervas and Dana M. Shannon, both of Hervas, Sotos, Condon & Bersani, P.C., of Itasca, for appellants.

Thomas F. Sonneborn, of Illinois Fraternal Order of Police Labor Council, of Western Springs, for appellee.

JUSTICE McLAREN delivered the opinion of the court:

The defendants, the Board of Fire and Police Commissioners of the Village of Itasca and its members, Cheryl Meyn, Daniel McDonald, and John Binnebose (collectively, the Board), and Michael J. McDonald, chief of police of the Village of Itasca, appeal the circuit court's reversal of the Board's termination of the plaintiff, Joseph Valio, for violations of certain Itasca police department rules and regulations. We reverse and reinstate the decision of the Board.

The following facts are taken from the record. In November 1997, defendant Michael McDonald, the Village of Itasca chief of police, filed three charges against the plaintiff, Joseph Valio, seeking the plaintiff's termination from the Itasca police department. The complaint alleged

that the plaintiff violated 11 different rules and regulations of the Itasca police department. The charges concerned three separate incidents, two emergency incidents occurring on October 19 and 23, 1997, and the investigation that followed the October 19, 1997, incident. After a hearing, the Board terminated the plaintiff. The plaintiff filed a complaint for administrative review with the circuit court. The circuit court reversed the Board's findings and decision.

## CHARGE No. ONE—MEDICAL EMERGENCY

The first charge against the plaintiff concerned a medical emergency call on October 19, 1997. The complaint alleged that the plaintiff improperly responded to the medical emergency and filed an unacceptable report both in violation of certain police department rules and regulations.

The evidence at the Board hearing revealed that, while on duty, the plaintiff was dispatched to respond to a "man passed out and unresponsive" at an address in Itasca. Commander Rusty Votava testified that the dispatch received by the plaintiff was a medical emergency requiring a code 1 response which, according to the Itasca police department manual, included full use of lights and sirens. The plaintiff responded to the October 19, 1997, dispatch with a code 3, using no lights or sirens. Votava testified that code 3 responses were for non-emergency calls only. The medical emergency involved a fatal heart attack. The plaintiff arrived at the scene 6½ minutes later.

Chief McDonald testified that this was an unacceptable response time. He also stated that the plaintiff was aware of the proper responses because he had been disciplined and counseled for an improper code response the previous year. McDonald explained that proper code level responses were necessary to ensure proper response times to incidents for the safety of other vehicles on the road, to aid dispatchers, and to reduce the Village's potential liability.

The plaintiff explained that he did not believe the dispatch required a code 1 because he believed the dispatch was for "a man passed out" and not "a man passed out and unresponsive." However, Commander Michael Harrison testified that both "a man passed out" and "a man passed out and unresponsive" were medical emergencies requiring a code 1 response.

The plaintiff was also charged with filing an improper report regarding the October 19 incident. Chief McDonald testified that the plaintiff's two-page report was grossly inadequate for a death report. The report did not indicate what had occurred, what the heart attack victim was doing immediately before he died, the location of the body, the identification of witnesses, or any other information that would

help determine how the victim died. The plaintiff later submitted a second, more detailed report.

McDonald stated that in 1996 the plaintiff was reprimanded for writing an improper report in connection with another death and was reminded of the proper way of writing a police report. At all times the plaintiff had access to a report-writing manual that contained instructions on how to prepare reports.

## CHARGE No. TWO—TRAFFIC ACCIDENT

The second charge against the plaintiff concerned a severe traffic accident that occurred on October 23, 1997, 500 feet outside the Itasca boundary. The accident involved five vehicles, including a semi tractor-trailer and a Honda CRX. The plaintiff, on duty in a marked Itasca squad car, was en route to assist another officer in obtaining a warrant when he passed the accident. As the plaintiff passed the scene, the CRX was crushed, the semi was pushed into the back end of the CRX, and the front of the CRX was severely damaged. Deputy Sheriff Martin Dedera, the investigating officer at the scene, testified that the accident blocked Rohlwing Road and vehicles were on the shoulder in a nearby ditch. Gasoline and debris had spilled onto the roadway, causing a potential fire hazard and hazardous materials situation. Numerous public servants, such as Deputy Sheriff Dedera and a paramedic, and regular citizens, including an off-duty nurse, who saw the scene stated that it was obvious that the accident was severe and it appeared that life-threatening injuries were involved.

It was uncontroverted that, although the accident occurred 500 feet outside the Itasca border, the accident affected persons traveling into and out of Itasca. The accident occurred at the height of morning rush hour traffic, and the traffic condition was dangerous because traffic in both directions had to drive on the shoulders to avoid the accident and the debris.

The plaintiff explained that he drove by the scene at about 10 miles per hour and did a "rolling assessment." The plaintiff saw no injuries and concluded that it was an accident involving property damage only. The plaintiff stated that he was not obligated to stop at the scene because a rule established by a former Itasca police chief prohibited an officer from stopping outside the Itasca corporate boundaries.

However, it was uncontroverted that, six years prior to the accident, Chief McDonald issued a new set of rules, which required police officers outside the Itasca limits to take all reasonably necessary steps regarding police matters of direct concern to Itasca. McDonald stated that, even without the new rule, the plaintiff should have

stopped due to the proximity of the accident to Itasca and its impact on Itasca traffic and safety. The plaintiff should have stopped to render medical assistance, control the scene, secure evidence, ensure that hazardous materials were not spilled, and prevent the accident from worsening. Two other police chiefs and a police commander agreed with Chief McDonald and opined that, regardless of the jurisdictional boundaries, the plaintiff was required to stop and render assistance. Two fellow officers who testified on behalf of the plaintiff testified that, under the circumstances, they would have stopped to assist.

A fellow officer testified that, on the morning of the day of the accident, the plaintiff was upset because of a meeting with his superiors regarding the October 19 incident. Later that day a fellow officer heard the plaintiff say that the plaintiff should be arrested for cashing his paycheck because he was not going to do any work that day.

## CHARGE No. THREE—INVESTIGATION

The third charge against the plaintiff alleged that the plaintiff lied during the investigation of the October 19, 1997, incident regarding his whereabouts when he received the medical emergency dispatch and also lied about following up at the hospital. The chief charged and the Board found the plaintiff in violation of the following rules and regulations: section 200.30 insubordination; section 430, reports; and section 320.20 integrity.

During the investigation of the October 19, 1997, incident, the plaintiff repeatedly told Commander Votava, who was investigating the incident, that he was filling his squad car with gasoline at about 12:45 p.m., when he received the medical emergency dispatch. This statement was contradicted by Sergeant Greg Scerbicke's testimony that he saw the plaintiff inside the police station a minute and a half or less before the medical emergency dispatch. Further, the computer records from the Village fuel pumps showed that the plaintiff fueled his squad car only once on October 19, 1997, at about 2:39 p.m., and not at 12:53 p.m., the time of the medical emergency dispatch. Moreover, the plaintiff's daily activity report corroborated the fuel pump records, showing that the plaintiff fueled his squad car only at 2:30 p.m. that day. In addition, a fellow officer testified that shortly before the dispatch the plaintiff was speaking with him about football in the police station lunchroom.

Regarding the plaintiff's follow-up at the hospital, the plaintiff testified that he told police investigators that he left the scene of the medical emergency at 1:16 p.m., drove to the hospital where the deceased had been taken, entered the hospital, and asked a firefighter for the deceased's date of birth and address. According to the plaintiff,

the firefighter did not have the information, so the plaintiff asked the firefighter to contact him at the police station when the information became known. The plaintiff could not recall the firefighter's name. The dispatcher's log showed that, 17 minutes after the plaintiff informed the dispatcher that he was en route to the hospital, the plaintiff arrived at the police station.

Commander Votava testified that he drove the route that plaintiff would have taken under similar conditions, at the maximum speed limit, and it took Votava 17 minutes. Votava stated that he had no time to leave his vehicle, walk into the hospital, and speak with anyone. Only one firefighter and two paramedics who were involved in the medical emergency were also at the hospital. None of these emergency personnel remembered seeing or speaking with the plaintiff at the hospital that day.

## EVIDENCE IN AGGRAVATION

The Board learned that the plaintiff was previously disciplined for using an improper emergency response code, filing inadequate, false, and improper police reports (including a death report), failing to notify dispatch when exiting and returning to his vehicle, failing to comply with procedure in a domestic violence arrest, and arguing with a Village employee at a Village facility. In addition, the plaintiff submitted inappropriate responses to a police baseball card program that profiled police officers and was targeted at children ages five through nine. The plaintiff also had been counseled for insufficient productivity and for making an unwanted sexual comment and hand gesture about a female officer in her presence. Finally, the fact that the plaintiff had been a police officer for 17 years was cited in aggravation, since his experience would have allegedly increased his ability to serve the community.

## THE BOARD'S FINDINGS

The Board found that each of the following constituted a substantial shortcoming warranting his termination: the plaintiff failed to render assistance at the October 23, 1997, accident; the plaintiff lied about his whereabouts at the time of the October 19, 1997, medical emergency dispatch and claimed presence at the hospital; and the plaintiff's previous similar misconduct, discipline, and performance record.

The plaintiff filed a complaint in the trial court seeking administrative review of the Board's decision pursuant to the Administrative Review Law (Review Law) (735 ILCS 5/3—101 et seq. (West 1998)). The Board filed a motion to dismiss for lack of subject matter jurisdiction, alleging that the plaintiff failed to file a timely complaint. The

trial court denied this motion and reversed the Board's findings and decision to terminate the plaintiff's employment. The Board now appeals both the trial court's denial of the Board's motion to dismiss and its reversal of the Board's findings and decision.

The Board first argues that the trial court lacked subject matter jurisdiction to hear this case because the plaintiff's complaint was file-stamped outside the 35-day period mandated by the Review Law. 735 ILCS 5/3—103 (West 1998). We review this issue *de novo*. See *Reyes v. Court of Claims*, 299 Ill. App. 3d 1097, 1101 (1998).

■ We believe the Board's argument is wholly without merit. The plaintiff was served with the Board's decision on January 20, 1998. Affidavits filed by the plaintiff's attorney and the attorney's secretary stated the following. The plaintiff's attorney's secretary mailed the plaintiff's complaint, summons, and filing fees on February 12, 1998. The complaint was received by the clerk's office on February 17, 1998, 28 days after the Board rendered its decision. On February 19, 1998, an employee at the clerk's office called the plaintiff's attorney's office and requested the attorney's ARDC (Attorney Registration and Disciplinary Committee) number so that she could obtain a local identification number for the attorney. A local identification number is required by local rule 1.25 (18th Judicial Cir. Ct. R. 1.25 (eff. May 10, 1993)). The plaintiff's attorney's employee provided the clerk's office the attorney's ARDC number that same day. The attorney was assigned a local attorney identification number on February 24, 1998. However, the clerk did not file stamp the complaint until the next day, 36 days after the Board had rendered its decision. The attorney was never notified by the clerk's office that the complaint was not accepted for filing.

"A document is filed when it is delivered to the proper officer with the intent of having such document kept on file by such officer in the proper place." *Sherman v. Board of Fire & Police Commissioners*, 111 Ill. App. 3d 1001, 1007 (1982). "[S]ince the person filing [a document] has no control over the officer who receives documents," delivery alone may constitute sufficient filing. *In re Estate of Davison*, 102 Ill. App. 3d 644, 645 (1981). The ministerial tasks such as stamping a pleading "Filed" are unnecessary to perfect a filing. *Davison*, 102 Ill. App. 3d at 645. See also *Ruffin v. Department of Transportation*, 101 Ill. App. 3d 728, 732 (1981) ("in the absence of leave of court, no one has authority to file documents as of any other date than that on which they are received").

Under the facts of this case, we determine that the complaint was filed on the day it was received by the clerk (February 17, 1997) and not on the day it was filed stamped. The complaint was delivered in a

timely manner with the *statutorily* required summons and filing fees. There was no evidence that the complaint or summons failed to meet the requirements of any statute or supreme court rule. Further, the clerk did nothing to indicate that it had not accepted the complaint for filing. It retained the documents instead of returning them to the plaintiff's attorney and never indicated that it would delay file stamping the documents. We recognize that the complaint did not include a local identification number. However, the local circuit court rule at issue requiring a local identification number cannot divest a court of jurisdiction where a complaint is otherwise properly delivered in a timely manner and accepted by the clerk. To rule otherwise would improperly elevate a local circuit court rule over statutory and supreme court rules. See 134 Ill. 2d R. 21(a) (vesting circuit courts with the power to adopt local rules as long as they do not conflict with supreme court rules or statutes). As previously stated, "Local rules promulgated under Rule 21(a) may not 'abrogate, limit or modify existing law.' " *People v. Williams*, 137 Ill. App. 3d 460-61 (1985), quoting *People v. Schroeder*, 102 Ill. App. 3d 133, 137 (1981). Circuit courts may enforce their local rules by other means, *e.g.*, sanctions, but circuit court clerks do not have the ability to determine jurisdiction by refusing to file stamp a document that complies with statutory and supreme court rules. Thus, inasmuch as existing state law does not countenance dismissal of an administrative review complaint for mere failure to conform with purely local rules of court, we determine the complaint was timely filed and the trial court properly denied the defendant's motion to dismiss for lack of subject matter jurisdiction. See *Williams*, 137 Ill. App. 3d at 461.

The defendant's citations to *Board of Education of St. Charles Community Unit School District, No. 303 v. Adelman*, 137 Ill. App. 3d 965 (1985), and *Schlobohm v. Police Board*, 122 Ill. App. 3d 541 (1984), are distinguishable. There was no evidence in either case that the plaintiff delivered and accepted a proper complaint and summons to the clerk in a timely manner. Thus, these cases are not controlling here.

Now, addressing the merits of the case, the defendant argues the trial court improperly reversed the Board's termination of the plaintiff's employment. We agree.

■ To review an administrative agency's decision regarding discharge, a court must apply a two-step process. *Jones v. Police Board*, 297 Ill. App. 3d 922, 931 (1998). First, the court must determine whether the agency's finding of guilt is contrary to the manifest weight of the evidence. *Jones*, 297 Ill. App. 3d at 931. Second, the court must determine if the findings of fact provide a sufficient basis for the

agency's conclusion that there is cause for discharge. *Jones*, 297 Ill. App. 3d at 931.

Because we determine that the Board's findings and decision to terminate based on the charge of lying during an investigation were amply supported by the evidence, we need not address the other charges.

■ A reviewing court considers a board's findings of fact to be *prima facie* true and correct. 735 ILCS 5/3—110 (West 1996); *Ruther v. Hillard*, 306 Ill. App. 3d 997 (1999). Further, the credibility of the witnesses, the weight to be given to their testimony, and the inferences to be drawn from the evidence are within a board's province. *Merrifield v. Illinois State Police Merit Board*, 294 Ill. App. 3d 520, 528 (1997). A board's findings will not be disturbed unless they are against the manifest weight of the evidence. *Launius v. Board of Fire & Police Commissioners*, 151 Ill. 2d 419, 427 (1992). A board's findings will be deemed contrary to the manifest weight of the evidence only where the opposite conclusion is clearly apparent. *McCloud v. Rodriguez*, 304 Ill. App. 3d 652, 660 (1999).

■ The Board's findings regarding the plaintiff's lying during an investigation were amply supported by the evidence. The chief charged and the Board found that the plaintiff was in violation of the following rules and regulations:

"§ 200.30 INSUBORDINATION:

Failure or deliberate refusal of any member or employee to obey a lawful order given by a superior officer shall be insubordination ***.

* * *

§ 320.20 INTEGRITY:

The integrity of a police department must be above reproach. The dishonesty of a single member may weaken public confidence and cast suspicion on the entire department.

* * *

§ 430 REPORTS:

No member shall knowingly falsify reports or cause inaccurate or improper information to be recorded on Department records."

The record reveals that, before the plaintiff was interrogated, he was advised to answer truthfully and that his statements constituted an official police report. The plaintiff repeatedly told the investigator that he was putting gasoline in his squad car when he received the medical emergency dispatch on October 19, 1997. However, it was uncontroverted that the gas pump records showed that the plaintiff did not put gas into his squad car until later that day. The plaintiff's

own daily activity report corroborated the gas pump records. Further, Sergeant Scerbicke testified that he saw the plaintiff minutes if not seconds before the plaintiff received the dispatch. It was uncontroverted that the Village fuel pumps are at a separate facility near the police station. Given this evidence, it cannot be said that an opposite conclusion is clearly evident. Thus, the Board's finding that the plaintiff violated departmental rules when he lied about his whereabouts before the October 19, 1997, medical emergency dispatch is not contrary to the manifest weight of the evidence.

The plaintiff also told the investigator that he went to the hospital after the medical emergency site, spoke with a paramedic about the deceased, and then returned to the police station. However, none of the emergency personnel who were present at the hospital saw the plaintiff at the hospital that day. Further, dispatch records showed that the plaintiff was en route to the hospital at 1:16 p.m. and then arrived at the police station only 17 minutes later. Commander Votava testified that he was unable to duplicate the plaintiff's claimed actions within 17 minutes, even though Votava drove at the maximum lawful speed. We acknowledge that one could reasonably find that the plaintiff did not lie about his visit to the hospital. However, that is not sufficient to reverse the Board's findings. A reviewing court may not resolve factual inconsistencies, reweigh the evidence, or make an independent determination of the facts. See *Ruther v. Hillard*, 306 Ill. App. 3d 997, 1002-03 (1999). Rather, we must sustain the Board's findings if the record contains any competent evidence to support the findings. *Merrifield*, 294 Ill. App. 3d at 528. Since one could reasonably find from the evidence that the plaintiff violated departmental rules when he lied during the investigation regarding following up at the hospital, the Board's decision was not against the manifest weight of the evidence and should have been sustained by the trial court.

Next, we must determine whether the factual findings are sufficient to support the Board's conclusion that "cause" exists for the plaintiff's discharge. *Merrifield*, 294 Ill. App. 3d at 529. "Cause" has been defined as " 'some substantial shortcoming which renders the employee's continuance in office in some way detrimental to the discipline and efficiency of the service and which the law and sound public opinion recognize as good cause for his no longer holding the position.' " *Grames v. Illinois State Police*, 254 Ill. App. 3d 191, 205 (1993), quoting *Department of Mental Health & Developmental Disabilities v. Civil Service Comm'n*, 85 Ill. 2d 547, 551 (1981). The board, and not the reviewing court, is in the best position to determine the effect of the officer's conduct on the department. *Merrifield*, 294 Ill. App. 3d at 530. Therefore, the reviewing court must give the board's determina-

tion of "cause" considerable deference. *Merrifield*, 294 Ill. App. 3d at 530. Further, a reviewing court may not decide whether a less stringent punishment is appropriate and may not reverse the board's decision unless it is arbitrary and unreasonable or unrelated to the requirements of service. *McCloud*, 304 Ill. App. 3d at 662.

The Board found sufficient reason to terminate the plaintiff's employment with the department. As the record demonstrates, the plaintiff violated certain departmental rules of conduct when he chose to lie during a departmental investigation. A single violation of the departmental rules would authorize dismissal. *Calomino v. Board of Fire & Police Commissioners*, 273 Ill. App. 3d 494, 499 (1995). The failure of an officer to provide truthful statements during a department investigation could impair the department's ability to properly and fully investigate violations of departmental regulations. Such a failure could impugn the integrity of the investigation and the department and adversely affect the department's ability to provide efficient service to the community. A police department must be able to conduct accurate investigations of its officers engaged in questionable police conduct. Based on the record in this case, the Board found sufficient "cause" existed to justify the plaintiff's discharge, and we cannot say its determination was arbitrary, unreasonable, or unrelated to the requirements of service. Because the record supports the Board's decision, we conclude that the circuit court erred by reversing the Board's decision. See *Merrifield*, 294 Ill. App. 3d at 531.

For the reasons stated, we reverse the judgment of the circuit court and reinstate the Board's decision.

Reversed; Board's decision reinstated.

GEIGER and RAPP, JJ., concur.