2024 IL App (1st) 230886-U

No. 1-23-0886

Order filed October 29, 2024

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| MARTENIA SHYNE, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | 19 CH 2193 |
| | ) | |
| THOMAS J. DART, in His Official Capacity as Sheriff of | ) | |
| Cook County; THE COOK COUNTY SHERIFF'S | ) | |
| MERIT BOARD; and COOK COUNTY, | ) | Honorable |
| | ) | Caroline Kate Moreland, |
| Defendants-Appellants. | ) | Judge, presiding. |

PRESIDING JUSTICE VAN TINE delivered the judgment of the court.
Justices McBride and Howse concurred in the judgment.

**ORDER**

¶ 1    *Held*:    We reverse the order of the circuit court that reversed the Cook County Sheriff's Merit Board's (Board) decision to terminate a correctional officer where the Board's factual findings were not against the manifest weight of the evidence and sufficient cause existed for the termination. We reinstate the findings of the Board.

¶ 2    Defendant, the Cook County Sheriff's Merit Board (Board), appeals from an order of the

circuit court reversing the Board's termination of plaintiff Martenia Shyne from employment with

the Cook County Sheriff's Office (Sheriff). On appeal, the Board contends its findings that Shyne violated a number of disciplinary rules were not against the manifest weight of the evidence and its termination decision was not arbitrary or unreasonable. We reverse the circuit court's order and reinstate the decision of the Board.

¶ 3                                        I. BACKGROUND

¶ 4        On July 8, 2002, Shyne was appointed as a correctional officer for the Sheriff and worked in various divisions within the Cook County Department of Corrections (CCDOC). She was assigned to Division I on April 19, 2010, and to Division VIII on February 17, 2016.

¶ 5        On January 20, 2017, after an investigation by the Sheriff's Office of Professional Review (OPR), the Sheriff filed a complaint with the Board, which was later amended, seeking to terminate Shyne for violating the rules, regulations, and general orders of the Sheriff's office and CCDOC. The Sheriff alleged, *inter alia*, that Shyne (1) associated with persons she knew were convicted felons and gang affiliated, naming Frederick Smith, Lester Green, Donald Wilson, Johnathan Noble, Dimeyon Cole, Dawon Cole, and Prince Johnson, (2) failed to properly document her associations with persons she knew were convicted felons and gang affiliated, (3) utilized the jail computer database to conduct inquiries of Smith numerous times, (4) failed to document telephone calls she received from Johnson, (5) failed to conduct herself in a professional manner on and off duty, (6) failed to maintain a professional demeaner, and (7) engaged in conduct unbecoming of an officer.[1]

¶ 6        On September 24, 2018, the Board conducted an evidentiary hearing.

---

[1] Because Dimeyon and Dawon Cole share the same last name, we refer to them by their first names.

¶ 7　　Mariel Ramirez testified that she was an OPR investigator assigned to Shyne's case. As part of her investigation, she reviewed the case file, including an anonymous letter and incident report, listened to audio recorded telephone calls, and conducted interviews.

¶ 8　　In October 2013, OPR received an anonymous letter, stating, *inter alia*, that Shyne had close relationships with several inmates who were gang members, including Smith, Green, Wilson, and ex-inmate Noble. The letter alleged that Shyne had sexual relationships with Smith and Noble, and she continued the relationship with Noble after his release. Shyne requested to work in the tier where Smith was assigned, "always" called Smith to the clothing room and barbershop, and used Wilson to send messages and information to Smith. Other officers knew about these inappropriate relationships. The letter asserted that Shyne needed to be transferred from Division I "right away" and presented a security breach.

¶ 9　　Ramirez also reviewed two phone calls from inmate Johnson to Shyne's personal cell phone number, in April 2012 and June 2013. Shyne did not answer the first phone call. This court has listened to a recording of the second phone call, which was entered into evidence without objection (Sheriff's Exhibit No. 3). During the brief exchange, Johnson wishes Shyne a happy birthday, and she tells him to "be careful over there," before hanging up.

¶ 10　　An incident report dated January 12, 2015, documented the interception of a letter written by Dimeyon to his brother Dawon referring to a correctional officer, later determined to be Shyne, whom Dimeyon appeared to be interested in. Dimeyon recounted that he and Shyne talked when they saw each other and noted that she was Facebook friends with Dawon.

¶ 11　　Ramirez interviewed Shyne twice and the audio recordings of the interviews were entered into evidence without objection (Sheriff's Exhibit No. 9). This court has listened to the interviews.

In them, Shyne confirms that she is familiar with inmates Wilson, Johnson, Green, Smith, Noble, and Dimeyon from Division I and is aware that they are convicted felons and gang associated. She states that she never conversed with any of them while working in the jail and denies having outside communication with any of the named inmates. She also acknowledges that she was Facebook friends with Dimeyon's brother, Dawon, and had responded when Dawon asked how his brother was doing in the jail.

¶ 12   OPR questions Shyne about her inmate search history in the jail's computer system, which showed that she had searched Smith's name 50 times. When asked why she had run Smith's name so many times, Shyne answers, "no explanation, I am not sure why I searched." When asked why an officer would run a detainee's name through the database, Shyne explains that officers could do so to learn how long the inmate had been in jail or to see the inmate's location.

¶ 13   OPR questions Shyne why someone could have misconstrued her relationship with the named inmates. Shyne states that she knew Noble "in passing" and had watched Smith grow up, because they were all from the Englewood neighborhood. Shyne confirms that she knew Smith from outside the jail "a little bit," for "maybe a year or so." Shyne later volunteers that Smith and Noble had contacted her through social media after their release. Noble had contacted her requesting help in obtaining his barber's license. Smith had contacted her to let her know he had been released. Shyne states that she never documented the contacts from Smith or Noble, and she was aware of CCDOC's rules and regulations regarding association with a convicted felon.

¶ 14   OPR questions Shyne about two phone calls to her personal cell phone number from Johnson. The first call displayed a jail phone number, so she did not answer it. The second call was a three-way call, initiated by Johnson, which she did answer. Shyne could not explain why

she did not end the phone call when she realized it was from Johnson, whom she knew was in the jail at the time. Shyne tells OPR that she did not document either call, but she did verbally inform her lieutenant after the second call. OPR asks how Johnson obtained her phone number, and Shyne explains that she has a cousin in the jail, Derrick Jones, and she believes that Johnson and others had "taunted" him for her number.

¶ 15    Ramirez testified that she also reviewed Shyne's personnel file and noted that Shyne had, on a prior occasion, provided documentation of a relative in the jail, but she never documented her relationship to Jones. Ramirez confirmed that the personnel file did not include documentation from Shyne that she received a phone call from inmate Johnson or communication from former inmates Smith and Noble.

¶ 16    Ramirez found that Shyne had violated Cook County Department of Corrections General Order 3.8, Cook County Sheriff's General Orders 11.2.20.0, and 11.2.20.1, as well as Cook County Sheriff's Department Rules and Regulations, Article X, Paragraph B. Ramirez determined that Shyne violated the general orders because she had known associations with a convicted felon and gang members and exhibited "conduct unbecoming." Ramirez confirmed that Shyne acknowledged that she had contact with known gang members.

¶ 17    On cross-examination, Ramirez confirmed that she interviewed the inmates named in the anonymous letter, and they all denied a relationship with Shyne, sexual or otherwise. Ramirez was unable to substantiate the anonymous letter's claims that other correctional officers knew of a relationship between Shyne and an inmate.

¶ 18    Shyne testified that she learned that Smith, Noble, Wilson, Green, and Dimeyon had felony convictions during her first interview with OPR. She denied the allegations in the anonymous letter and having any sort of relationship with any inmate.

¶ 19    When asked if she was truthful both times that she talked to OPR about how she knew Smith and Noble, Shyne testified that she "recanted" her initial statement, because she did know them. Regarding running Smith's name 50 times in the jail system's database, Shyne recalled that he worked under her in the barbershop, and she had checked the system, approximately every third day, to verify he was paid.

¶ 20    Shyne explained she had accepted Dawon's Facebook request because they had mutual friends. She did not know that he was a convicted felon when they became Facebook friends, and she ceased communicating with him after the OPR interviews. Shyne clarified that after the second interview, Dawon contacted her "again through [their] usual conversation," telling her he had a brother in Division I, and asked how he was doing. She replied, " 'Oh, okay' " and then "cut off all ties."

¶ 21    Shyne believed her cousin Jones gave her phone number to Johnson. Shyne verbally reported the three-way phone call to her lieutenant, and she "didn't have any excuse for not reporting it the way [she] should have." She confirmed that she never reported the call in writing.

¶ 22    On cross-examination, Shyne testified that she "didn't understand" the definition of convicted felon when she told OPR that she knew that the inmates whom she was questioned about were felons. She corrected herself after she "got the definition." Shyne never documented that Noble and Smith contacted her after they were released, and only became aware that she was not to have contact with gang members or convicted felons after the investigation. Shyne

acknowledged that part of her job was to stay apprised of all Sheriff's Orders and if a Sheriff's Order contained that information, she should know it.

¶ 23 On January 15, 2019, the Board issued its decision, ordering Shyne's termination. The Board determined that Shyne initially told OPR that she did not have contact with inmates who were gang members, but later changed her answer. Similarly, it found that she initially told OPR that she only knew the inmates named in the complaint from the jail, but then changed her answer to knowing them from her neighborhood. She had also failed to provide an explanation for running Smith's name 50 times in the jail computer system's database. The Board further found that Shyne admitted to communicating with Dawon about Dimeyon. Finally, the Board determined that Shyne failed to document the Johnson phone calls, her contact with inmates who had been released and were known gang members, social media exchanges with inmates, and her relationship with Jones.

¶ 24 The Board concluded that "[b]ased on the evidence presented, and after assessing the credibility of the witnesses and the weight given by the evidence in the record," Shyne violated Cook County Department of Corrections General Order 3.8 (requiring officers to conduct themselves in a professional and ethical manner on and off duty), Cook County Sheriff's General Orders 11.2.20.0 (establishing the expected rules of conduct) and 11.2.20.1 (establishing the expected standards of conduct), and Article X, Paragraph B of the Cook County Sheriff's Department Rules and Regulations (prohibiting employees from violating rules and regulations).

¶ 25 Shyne filed a petition for administrative review in the circuit court. The court reversed the Board's decision, finding the Board violated the Open Meetings Act (5 ILCS 120/1 *et seq.* (West 2020)). On remand, the Board adopted its prior decision to terminate Shyne.

¶ 26    Shyne again requested administrative review with the circuit court. The court reversed the Board's decision, finding that several of the Board's factual findings lacked support. The court did not find "*any* evidence" suggesting that Shyne actually violated any rule, regulation, or general order. (Emphasis in original.) The court ordered that Shyne be reinstated with back pay.

¶ 27                                        II. ANALYSIS

¶ 28    On appeal, the Board argues that its factual findings were not against the manifest weight of the evidence, and its decision to discharge Shyne was not arbitrary or unreasonable.

¶ 29    In administrative review cases, this court reviews the decision of the administrative agency, not the decision of the circuit court. *Lopez v. Dart*, 2018 IL App (1st) 170733, ¶ 67. The "findings and conclusions of the administrative agency on questions of fact shall be held to be prima facie true and correct." 735 ILCS 5/3-110 (West 2020). We will not reweigh the evidence to make an independent determination of the facts. *Board of Education of City of Chicago v. Illinois Education Labor Relations Board*, 2015 IL 118043, ¶ 15.

¶ 30    A sheriff's correctional officer may only be discharged for cause. 55 ILCS 5/3-7012 (West 2020). Our review of an administrative agency's decision to terminate an employee is a two-step process. *Cintron v. Dart*, 2022 IL App (1st) 201369, ¶ 19. First, we must determine whether the Board's findings of fact are against the manifest weight of the evidence. *Id*. Next, we determine whether the Board's factual findings provided a sufficient basis to conclude that cause for discharge existed, reversing the Board's decision only if it was arbitrary and unreasonable, or was unrelated to the requirements for service. *Id*. ¶¶ 20, 26.

¶ 31    An agency's factual findings are against the manifest weight of the evidence only if the opposite conclusion is clearly evident. *Mireles v. Dart*, 2023 IL App (1st) 221090, ¶ 56. As such,

there need only be some competent evidence in the record which supports the Board's decision. *Lopez*, 2018 IL App (1st) 170733, ¶ 70. However, even under the manifest weight standard, "the deference we afford the administrative agency's decision is not boundless." *Wade v. City of North Chicago Police Pension Board*, 226 Ill. 2d 485, 507 (2007).

¶ 32 The Board's decision to terminate Shyne was based on the factual findings that she (1) made false statements to OPR regarding her contact with felons and gang affiliated persons, (2) made false statements to OPR that she only knew inmates from the jail, (3) failed to document communications with convicted felons and gang affiliated persons, (4) had communications with Dawon regarding inmate Dimeyon, (5) failed to document her familial relationship with Jones, (6) failed to explain why she searched Smith's name 50 times in the prison's database, and (7) had knowledge of the policy prohibiting communications with gang affiliated persons.

¶ 33 Sheriff's General Order 11.2.20.0(VI)(H)(2) requires "every employee to immediately report to OPR and his/her immediate supervisor *** verbally *and in writing*, any fact or situation which may give rise to or be construed as *** unethical behavior, and/or a *possible* conflict of interest." (Emphasis added.) The reporting requirement extends to, but is not limited to, "reporting anything which could impair the employee's performance of his/her duties in a fair and impartial manner." Sheriff's General Order 11.2.20.0(VI)(H)(3). Under Sheriff's General Order 11.2.20.0(VI)(D)(9), except for the performance of official duties or where unavoidable because of a familial relationship, an officer is prohibited from engaging in regular or continuous associations with persons who have a reputation for present or past involvement in felonious or criminal behavior.

¶ 34    The Board was presented with ample evidence establishing that Shyne violated Sheriff's General Order 11.2.20.0 by failing to properly report her contacts with inmates and convicted felons. The record shows, and Shyne does not dispute, that detainee Johnson initiated phone calls to her personal cell phone number more than once, and she never documented the phone calls. Receiving a phone call from a detainee at a personal cell phone number may be construed as a possible conflict of interest. Although Shyne contends that she verbally told her lieutenant about the three-way phone call during which Johnson wished her a happy birthday and she told him to "be careful over there," she did not submit written documentation regarding the incident and did not inform OPR as required.

¶ 35    Shyne believed that Johnson had obtained her personal cell phone number from her cousin, Jones, who was also housed in Division I, where she was assigned at the time. Shyne admitted that she never documented that she was related to Jones. Working in the same division of the jail where a cousin is housed may be construed as a possible conflict of interest. Shyne maintains that, because she never received a direct assignment involving Jones, she was not required to document their relationship. However, incidents construed as a possible, and not just actual, conflict of interest must be documented, and the record shows that she had previously provided documentation of a different familial relationship. Moreover, the fact that Shyne believed Jones provided another detainee her personal cell phone number only strengthens the evidence of a possible conflict of interest that required written documentation.

¶ 36    Likewise, Shyne stated during her OPR interview that Smith and Noble had contacted her after their release through social media. She knew them "in passing" from the neighborhood and was aware that they were convicted felons and gang members. Shyne admitted that she did not

provide any documentation of this contact. Communicating with convicted felons and gang associated individuals may be construed as a possible conflict of interest.

¶ 37    In this case, the Board identified incidents that could be construed as possible conflicts of interest and therefore required verbal and written documentation under Sheriff's General Order 11.2.20.0(VI)(H)(2)(3). It is undisputed that Shyne did not provide any documentation of her familial relationship with Jones, as well as her communications with Johnson, Smith, and Noble, whom she was aware had gang associations and were convicted felons. Shyne's failure to properly report those possible conflicts of interests violated Sheriff's General Order 11.2.20.0(VI)(H)(2)(3). We therefore have no basis to overturn the Board's findings. See *Marconi v. Chicago Heights Police Pension Board*, 225 Ill. 2d 497, 534 (2006) (we will not reverse a Board's finding where supported by sufficient evidence).

¶ 38    Sheriff's General Order 11.2.20.0(VI)(D)(25) provides that employees shall not "[f]ail to cooperate or fail to be truthful with external and/or integral agencies in an investigation of a criminal or civil mat[t]er," and 11.2.20.0(VI)(I)(1) requires employees to "[t]ruthfully answer all questions, *** and provide truthful and relevant statements when the employee is involved in an investigation."

¶ 39    Here, Shyne's telephone communication with Johnson and social media contacts from Smith and Noble also support the Board's finding that she made false statements during her OPR interview when she denied outside communication with those individuals. Although Shyne argues that there was "nothing wrong" with helping former detainee Noble obtain a barbershop license and being friendly to Johnson, those contentions are irrelevant to the finding that she made false

statements to OPR. We therefore have no basis to overturn the Board's finding that she violated Sheriff's General Order 11.2.20.0(VI). See *Marconi*, 225 Ill. 2d at 534.

¶ 40   Although the Board made other factual findings regarding instances where Shyne violated the rules, such as repeatedly searching Smith's name in the jail's computer system database and the situation involving the Cole brothers, it is unnecessary to consider those factual findings as additional bases for finding that she violated Sheriff's Orders, because an officer's violation of "a single rule may constitute sufficient basis for discharge." *Cruz v. Cook County Sheriff's Merit Board*, 394 Ill. App. 3d 337, 342 (2009).

¶ 41   The Board next contends that its decision to terminate Shyne for cause was neither arbitrary nor unreasonable where her conduct violated multiple disciplinary rules.

¶ 42   "Cause" is "some substantial shortcoming which renders continuance in *** office or employment in some way detrimental to the discipline and efficiency of the service and something which the law and a sound public opinion recognize as a good cause" for dismissal. (Internal quotation marks omitted.) *Ehlers v. Jackson County Sheriff's Merit Comm'n*, 183 Ill. 2d 83, 89 (1998).

¶ 43   Police departments require disciplined officers to function effectively. *Siwek v. Police Board of City of Chicago*, 374 Ill. App. 3d 735, 738 (2007). Therefore, "the promotion of discipline through sanctions for disobedience of rules, regulations and orders is neither inappropriate nor unrelated to the needs of a police force." *Id.* Because the Board, and not this court, "stands in the best position to determine the effect of an officer's conduct on the department," we give the Board's determination of cause "heavy deference." *Cintron*, 2022 IL App (1st) 201369, ¶ 26. The relevant inquiry is not whether this court would have imposed a more lenient sanction than

discharge, but whether the Board's decision to discharge is arbitrary and unreasonable or unrelated to the requirements of service. *Valio v. Board of Fire & Police Commissioners*, 311 Ill. App. 3d 321, 331 (2000).

¶ 44    The Board's decision to terminate Shyne for cause was not unreasonable, arbitrary, or unrelated to the requirements of her service. After hearing all of the evidence, the Board determined that Shyne violated Sheriff's rules of conduct premised on her false statements during the investigation, conflicts of interest, and lack of judgment. As the Board contends, Shyne's dishonesty during her OPR interviews alone provided cause for termination. See *Bless v. Cook County Sheriff's Office*, 2024 IL App (1st) 230256, ¶ 46 (finding "indisputable" that termination of a police officer for conduct calling into question his honesty was not arbitrary, unreasonable, or unrelated to the requirements of service). But here, it was not just dishonesty with OPR, as Shyne failed to comply in multiple instances with Sheriff's orders dictating that she properly report possible conflicts of interest. "[D]ischarge is an appropriate sanction when a police officer's misconduct manifests a disrespect for the law and tends to undermine public confidence in the honesty and integrity of the police force." *Caliendo v. Martin*, 250 Ill. App. 3d 409, 418 (1993). Shyne's violation of multiple rules of conduct was sufficiently serious to justify her discharge.

¶ 45    Shyne argues that termination was unwarranted because there was no evidence of rule violations and, in any event, the alleged misconduct was not detrimental to the discipline and efficiency of her service as a correctional officer. However, for the reasons stated, the record shows her conduct did violate the rules. She also contends that her lack of prior discipline may be considered in fashioning an appropriate sanction, but the Board "need not give mitigating evidence sufficient weight to overcome a termination decision, and a discharge decision made despite the

presentation of such evidence is not, without more, arbitrary or otherwise erroneous." *Siwek*, 374 Ill. App. 3d at 738-39. In this case, there was nothing unreasonable or arbitrary about the Board's decision to terminate Shyne based on her violation of rules with which she must strictly comply. See Sheriff's General Order 11.2.20.0(III) (all employees must show "strict compliance" with Sheriff's General Order 11.2.20.0 and violations "may result in disciplinary action up to and including termination").

¶ 46 Accordingly, we reverse the judgment of the circuit court and reinstate the Board's decision.

¶ 47 Reversed; Board's decision reinstated.