No. 2--05--0877          Filed 3-21-07

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| TIMOTHY HERMESDORF, | ) | Appeal from the Circuit Court |
| | ) | of Du Page County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 05--MR--242 |
| | ) | |
| JOHN H. WU, as Chief of the Naperville | ) | |
| Fire Department; THE CITY OF | ) | |
| NAPERVILLE; THE BOARD OF POLICE | ) | |
| AND FIRE COMMISSIONERS OF | ) | |
| THE CITY OF NAPERVILLE; THE CITY | ) | |
| OF NAPERVILLE FIRE DEPARTMENT; | ) | |
| SUSAN M. WEHRLI; RAYMOND E. | ) | |
| JONES; TRACY K. McLAUGHLIN; | ) | |
| DAVID L. RECHENMACHER; and | ) | |
| DONALD E. PERRY, | ) | Honorable |
| | ) | Edward R. Duncan, Jr., |
| Defendants-Appellees. | ) | Judge, Presiding. |

JUSTICE HUTCHINSON delivered the opinion of the court:

In this administrative review proceeding, plaintiff, Timothy Hermesdorf, appeals the trial court's judgment affirming the decision of defendant, the Board of Police and Fire Commissioners of the City of Naperville (the Board), which discharged plaintiff for cause from his position as a firefighter and paramedic with defendants, the City of Naperville (the City) and the City of Naperville Fire Department (the Department). On appeal, plaintiff contends: (1) the Board acted arbitrarily and unreasonably when it discharged him, given his 17 years of service without prior

disciplinary action and given his psychiatric condition; (2) the Board violated the Americans with Disabilities Act of 1990 (the ADA) (42 U.S.C. §12101 et seq. (2000)); and (3) he was denied a full and fair disciplinary hearing when the City failed to timely tender its discovery responses. We reverse and remand for further proceedings.

On November 30, 2004, the Department filed formal disciplinary charges with the Board, seeking plaintiff's discharge from his position as a firefighter and paramedic. The Department alleged that, on September 19, 2004, plaintiff engaged in acts of misconduct that violated various provisions of the City's employee policy manual, the Department's performance of duty policy, and the code of ethics of the Edward Hospital emergency services system. These alleged violations included failing to perform a proper medical assessment of a patient, failing to provide proper medical treatment for a patient, verbally abusing a patient, having inappropriate physical contact with a patient, and causing physical injury to a patient by using inappropriate physical restraint.

On January 27, 2005, the Board conducted a disciplinary hearing. The City first called paramedic Ron Marx. Marx testified that he had been employed as a firefighter and paramedic with the Department for 13 years. He testified that he and plaintiff were on duty on September 19, 2004. At approximately 2:44 a.m., he and plaintiff responded to a call to provide treatment to a female in custody at the Naperville police department, who was believed to be suffering from a panic or anxiety attack. When he and plaintiff entered the police station, Marx heard a female, later identified as Teresa Briskovic, yelling and screaming. Marx testified that he and plaintiff went to Briskovic's holding cell. Marx observed that Briskovic was sitting in her cell and that she was drooling and yelling and appeared to be hyperventilating. Marx testified that plaintiff walked over to Briskovic, pulled her head up by her hair, and said "What the hell is your problem?" Briskovic responded by

yelling that she wanted her prescription anti-anxiety medication and that she did not want to go to the hospital. Marx testified that he told plaintiff to stop, and plaintiff released Briskovic's hair. Marx testified that Briskovic again stated that she did not want to go to the hospital, because she did not have insurance and could not afford the treatment. He testified that, when Briskovic refused to be transported, plaintiff twisted Briskovic's arm behind her back to get her to stand up. Briskovic yelled at plaintiff that he was hurting her and asked him to let her go. Marx testified that plaintiff responded, "I'll break your f---ing arm. You have to calm down." Marx again told plaintiff to stop, and plaintiff told Marx to retrieve a gurney.

Marx further testified that, while he was in the hallway preparing the gurney, he heard a "thud" in the holding cell. He observed Briskovic sitting on the floor in the holding cell and plaintiff standing over her "with his hand on top of her head." Marx testified that plaintiff and a police officer helped Briskovic off of the floor and put her onto the gurney. Marx then fastened the straps. Marx testified that Briskovic continued to be belligerent and that she was yelling "nonstop." Marx testified that he did not believe Briskovic was a physical threat to herself or anyone else.

Marx testified that, while he and plaintiff were transporting Briskovic to the ambulance, she tried to sit up. Marx testified that plaintiff put his open hand on her chest, pushed her down onto the gurney, and said "Set your ass down." Marx testified that Briskovic tried to sit up a second time and that plaintiff put his hand on her neck and pushed her down onto the gurney. Marx told plaintiff to stop. Marx testified that he and plaintiff lifted Briskovic into the ambulance. While they were waiting for an officer to accompany them to the hospital, plaintiff got into the ambulance and sat in the attendant's seat next to Briskovic. Marx testified that plaintiff and Briskovic continued to engage in a verbal argument. Marx asked plaintiff to exit the ambulance. As plaintiff exited the ambulance,

he apologized to Marx and stated, "I lost it." Marx testified that he attended to Briskovic while plaintiff drove the ambulance to the hospital. On the way back to the fire station, Marx told plaintiff that "this was a pretty serious thing" and that plaintiff needed to report the matter to the captain. Plaintiff agreed he would report the matter.

The City next called Naperville police sergeant Lee Martin. Martin testified that, on September 19, 2004, at approximately 2:44 a.m., he and sergeant Raymond Atkins were waiting at the Naperville police station for an ambulance to arrive to treat an individual in police custody. Martin testified that, when plaintiff first arrived at the police station, he appeared "a little bit upset" and "a little bit short and gruff." Martin testified that he and Atkins escorted plaintiff and Marx into the station. Once inside, Martin went into the police station's control room, and Atkins took the paramedics to Briskovic's holding cell. Martin testified that, through a glass window in the control room, he observed portions of Briskovic's holding cell. He testified that he heard yelling and when he looked through the window, he saw plaintiff "forcibly escorting" Briskovic from her cell toward a gurney. Martin testified that one of plaintiff's hands was "full" of Briskovic's hair and that his other hand was pulling Briskovic's arm behind her back. Martin observed Marx securing Briskovic to the gurney with straps, while Briskovic was "flailing around trying to escape" plaintiff's grasp. Martin testified that Briskovic tried to sit up, and that plaintiff "appeared to take an open hand, grabbed her by the throat and forcibly put her upper half down on the cot."

The City next called Naperville police sergeant Raymond Atkins to testify. Atkins testified that he was on duty on September 19, 2004, and that he called for an ambulance for Briskovic. Briskovic had complained that she was having an anxiety attack and requested her prescription medication. Atkins testified that plaintiff and Marx arrived in an ambulance and that he took them

to Briskovic's cell. Atkins testified that plaintiff performed no physical or medical assessment of Briskovic prior to grabbing her by the hair. Atkins testified that, while he was in the police station's control room, he heard a loud sound coming from the direction of Briskovic's cell. When Atkins went into the hallway to see what had happened, he observed Briskovic "almost" on the ground with plaintiff holding onto her arm. Plaintiff then moved Briskovic toward a gurney while holding her arm. Atkins testified that, after Briskovic attempted to escape from the restraints on the gurney, he observed plaintiff force Briskovic down onto the gurney by forming a "V" shape with his hand and pushing and holding her down around the throat. Atkins suggested that plaintiff remove himself from contact with Briskovic. Atkins testified that at no time did he consider Briskovic to be a threat to herself or others.

Atkins further testified that he went to the hospital to speak with plaintiff about the events at the police station. Plaintiff told him he could not explain what caused him to act in such a manner. Plaintiff said he had been a paramedic for a long time and that maybe it was time "to get out." Atkins testified that Briskovic came to see him at the police station later that day, at approximately 5 p.m. Briskovic filed a complaint against plaintiff. At that time, an evidence technician took photographs of Briskovic's injuries. Those photographs depicted bruises on Briskovic's arms, shoulders, neck, and back and were admitted into evidence at the hearing.

The City next called Teresa Briskovic. Briskovic testified that, at approximately 2:44 a.m. on September 19, 2004, she was sitting on a cot in a holding cell. Briskovic testified that, within a few seconds after plaintiff entered her cell, he pulled her head up by her hair without any warning. Briskovic told plaintiff she was having an anxiety attack and needed her medication. Plaintiff told Briskovic that she could not be having an anxiety attack, because she was able to breathe. Briskovic

testified that she was "shocked and terrified" by plaintiff's conduct and that she began crying. She testified that plaintiff then twisted her right arm behind her back. She told plaintiff that she was in pain and that he was going to break her arm. Plaintiff told her that he would break her arm if he wanted. Briskovic testified that plaintiff then pushed her into a brick wall and that she fell to the ground. Briskovic testified that she repeatedly told plaintiff that she did not want to go to the hospital and that she did not have medical insurance, but plaintiff ignored her. When Briskovic arrived at the hospital, she told the emergency room staff that she did not want to be treated, and she was released from the hospital without being treated. Briskovic was then transported back to the police station and she was later released from custody. She returned to the police station at 5 p.m. to file a complaint against plaintiff.

The City next called Naperville fire chief John "George" Wu to testify. Wu testified that he and assistant fire chief Pat Mullen conducted an investigation into the incident involving plaintiff. As part of this investigation, Mullen interrogated plaintiff on the record. Wu testified that, in filing the instant charges, he took into account all of the information uncovered in the investigation and contained in the transcript of the interrogation. Wu testified that, based upon his review of these materials, he believed plaintiff was guilty of all of the charges alleged in the complaint. The City then rested its case.

In his case in chief, plaintiff recalled Sergeant Atkins to testify. Atkins acknowledged that, at the time Briskovic filed her complaint, she told him that she had been trying to pull away from plaintiff when she fell into the wall in her holding cell. Plaintiff then rested his case.

The Board went into closed session to deliberate, and when it returned to open session, the Board found plaintiff guilty of the misconduct alleged in the complaint. The Board then proceeded to the penalty phase of the hearing.

The City recalled Wu to testify in aggravation. Wu testified that, when plaintiff was being interrogated during the Department's investigation, he did not accept responsibility for his actions. Wu explained that plaintiff was specifically asked whether all of his conduct during the incident was appropriate under the Department's policies and procedures. Plaintiff responded that, considering the circumstances, he did the best he could. When plaintiff was asked whether he thought he had taken any actions that were inconsistent with the Department's policies and procedures, plaintiff answered that he did not. Wu testified that plaintiff's unwillingness to accept responsibility for his actions led Wu to conclude that plaintiff did not understand the nature of his wrongdoing. Wu testified that he was concerned that plaintiff might repeat his misconduct in the future. Based upon those considerations, Wu recommended that the Board discharge plaintiff to protect the public.

In mitigation, plaintiff introduced into evidence several documents from his employment file. Specifically, plaintiff introduced his annual performance reviews for the preceding 17 years. Each of those reviews reflected "above average" performance. Plaintiff also introduced several commendations he had received from the City and the Department, as well as many letters of appreciation he received for his work in developing and teaching continuing education courses for fellow paramedics and for hospital personnel.

Additionally, plaintiff submitted documentation relating to his psychiatric treatment following the incident. Among these records were the admitting notes of Dr. Balamoorti Gaonkar. Those notes indicated that plaintiff checked himself into the behavioral health services unit of

Provena Mercy Center in Aurora at approximately 8 p.m. on September 19, 2004. At the time of his admission, plaintiff reported having been severely depressed for the prior few months and that his depression had worsened over the past two weeks. Plaintiff also reported that he had been taking Paxil since he was first diagnosed with depression in 2002. The admitting notes indicated that plaintiff reported a history of "explosive behaviors" and that he easily became irritable, angry, and agitated. Plaintiff reported that, earlier in the day, he had become so irritable that he was aggressive toward a patient. The notes reflected that plaintiff complained of hopelessness and vague suicidal thoughts, decreased sleep, and decreased appetite.

Plaintiff also introduced into evidence a discharge summary authored by Dr. Sandeep Gaonkar and the discharge instructions he received from the hospital. Both of these documents reflected that plaintiff was discharged on September 26, 2004, with diagnoses of depression and bipolar disorder. Dr. Sandeep Gaonkar prescribed Trazodone, Risperdal, Depakote, and an increased dosage of Paxil. Plaintiff was instructed to continue anger management classes, as well as group and individual counseling sessions.

Plaintiff also introduced a "Return to Work/Fitness for Duty Form" and a "Medical Certification Statement" that were completed and signed by plaintiff and Dr. Sandeep Gaonkar on September 29, 2004. These forms indicated that plaintiff had been newly diagnosed with bipolar disorder and that he was currently unable to return to work because his medication was affecting his motor skills. Plaintiff also submitted four letters signed by Dr. Sandeep Gaonkar. Each of these letters was addressed "To Whom it May Concern." The first letter was dated October 21, 2004, and indicated that plaintiff was released to return to work for the purpose of teaching courses. The second letter was dated October 24, 2004, and indicated that Dr. Sandeep Gaonkar needed to

reschedule an appointment. The third letter was dated November 3, 2004, and indicated that plaintiff was to continue taking his medications and was to remain off work "until further notice." The fourth letter was dated December 8, 2004, and stated, in part:

"I am writing this letter to let you know that Timothy Hermesdorf was seen by me inpatient at Provena Mercy *** and discharged with the diagnosis of Bipolar II Disorder, depressed. Since he was started on medication, Tim has shown significant improvement with his symptoms namely with areas of mood swings, irritability, and impulsive behaviors. He is regular in attending his appointments and is compliant with his medications."

After the arguments of counsel, the Board voted unanimously to discharge plaintiff for cause. The Board found that plaintiff's physical and verbal abuse of a patient was a "substantial shortcoming" that warranted discharge. In making its findings, the Board specifically noted that the medical records plaintiff introduced did not mitigate against the Board's decision to discharge plaintiff. Instead, the Board found that the records provided additional support for discharge, noting that plaintiff "has a tendency for explosive behavior."

On March 7, 2005, plaintiff filed a complaint for administrative review in the trial court. Before the trial court, plaintiff argued: (1) he was deprived of a fair hearing as a result of the City's failure to timely tender its discovery responses; (2) the Board's decision was contrary to the manifest weight of the evidence; and (3) the Board's decision to discharge plaintiff was a violation of the ADA. On August 3, 2005, the trial court affirmed the decision of the Board, finding that (1) any procedural deficiencies that may have occurred did not deprive plaintiff of a fair hearing, and (2) the Board's decision to terminate plaintiff was not against the manifest weight of the evidence. The trial

court did not specifically rule upon plaintiff's argument relating to the ADA. Plaintiff filed a timely notice of appeal.

Prior to discussing the merits, we first consider two motions taken with the case. After defendants filed their appellate briefs, plaintiff moved to supplement the record on appeal with a May 8, 2006, written decision of the Naperville Board of Trustees of the Firefighters' Pension Fund (the Pension Board), granting plaintiff's request for a nonduty disability pension. Plaintiff later moved to supplement the record on appeal with the transcripts of those proceedings. Plaintiff argues that a consideration of these documents is necessary to give a proper context in which to review the Board's decision. Defendants object, arguing that it would be improper for this court to consider evidence not presented to the Board at the time of the disciplinary hearing. We allow the first motion and deny the second motion.

We allow the motion that asks this court to take judicial notice of the decision of the Pension Board. This court may take judicial notice of a written decision that is part of the record in another court or administrative tribunal because such documents fall within the category of readily verifiable facts "which are capable of 'instant and unquestionable demonstration.' " May Department Stores Co. v. Teamsters Union Local No. 743, 64 Ill. 2d 153, 159 (1976), quoting 9 J. Wigmore, Evidence §2571, at 598 (3rd ed. 1940). We deny the motion that asks this court to consider evidence by way of the report of proceedings of the hearing before the Pension Board. This case involves the review of a decision made by the Board, an administrative agency. As such, our scope of review is governed by section 3--110 of the Code of Civil Procedure (the Code) (735 ILCS 5/3--110 (West 2004)), which provides, in part, "No new or additional evidence in support of or in opposition to any finding, order, determination or decision of the administrative agency shall be heard by the [reviewing]

court." We agree with defendants that section 3--110 of the Code precludes our consideration of the evidence introduced during the hearing on plaintiff's disability pension. The evidence was not before the Board when it decided to discharge plaintiff. See Rodriguez v. The Sheriff's Merit Comm'n of Kane County, 218 Ill. 2d 342, 349-50 (2006) ("The Administrative Review Law was an innovation and a departure from the common law, and the procedures established therein must be followed"); Deen v. Lustig, 337 Ill. App. 3d 294, 304-05 (2003) (denying police officer's motion to supplement the record on appeal with a medical report that was not introduced at the administrative hearing).

Plaintiff relies on this court's recent decision in Lynch v. City of Waukegan, 363 Ill. App. 3d 1078 (2006), to argue that it is appropriate for this court to take judicial notice of the evidence introduced at the Pension Board's hearing. In Lynch, a firefighter was discharged for cause after he had been granted a medical leave of absence to seek treatment for psychiatric conditions that were the basis for misconduct both on duty and off duty. Lynch, 363 Ill. App. 3d at 1085. The firefighter was later granted a duty-related medical pension. Lynch, 363 Ill. App. 3d at 1085. This court took judicial notice of the evidence submitted to the Pension Board in that case because it appears that no party objected to that evidence being considered by this court. It is the duty of the parties on appeal to object to supplementation of the record on appeal with inappropriate or irrelevant materials. State Farm Fire & Casualty Co. v. M. Walter Roofing Co., 271 Ill. App. 3d 42, 47 (1995). Because we are presented with an objection to the proposed supplementation in this appeal, and because we have found that section 3--110 of the Code precludes our consideration of the evidence introduced during the hearing on plaintiff's disability pension, we will disregard all references in plaintiff's reply brief to the report of proceedings and the evidence submitted at the hearing before the Pension Board. See Allstate Insurance Co. v. Kovar, 363 Ill. App. 3d 493, 499 (2006).

Turning to the merits of the case, we first consider plaintiff's contention that the Board's decision to discharge him was arbitrary and unreasonable. Plaintiff argues that the Board acted arbitrarily and unreasonably in discharging him because the instant incident was the first time he was disciplined in more than 17 years of employment. Plaintiff argues that the Board failed to give sufficient consideration to his above-average performance reviews, his numerous commendations, and the many letters of appreciation he received for his work in developing and teaching continuing education courses to paramedics and medical personnel in hospitals. Plaintiff also argues that the Board acted arbitrarily and unreasonably in discharging him because it did not consider the possibility that his acts of misconduct were caused by a psychiatric illness or condition.

In an appeal from the judgment of an administrative review proceeding, the appellate court reviews the administrative agency's decision, not the trial court's decision. Dowrick v. Village of Downers Grove, 362 Ill. App. 3d 512, 515 (2005). In reviewing an administrative agency's decision to discharge an employee, this court applies a two-step process. Valio v. Board of Fire & Police Commissioners, 311 Ill. App. 3d 321, 328 (2000). First, we must determine whether the administrative agency's finding of guilt was contrary to the manifest weight of the evidence. Walsh v. Board of Fire & Police Commissioners, 96 Ill. 2d 101, 105 (1983). Second, we must determine whether the administrative agency's findings of fact provide a sufficient basis for the agency's conclusion that cause for discharge existed. Walsh, 96 Ill. 2d at 105.

Turning first to a consideration of the Board's finding of guilt, we note that an administrative agency's findings will be deemed contrary to the manifest weight of the evidence only where the opposite conclusion is clearly apparent. Du Page County Airport Authority v. Department of Revenue, 358 Ill. App. 3d 476, 481 (2005). The reviewing court starts from the position that the

administrative agency's findings of fact are prima facie true and correct. 735 ILCS 5/3--110 (West 2004); Valio, 311 Ill. App. 3d at 328-29. Here, although plaintiff notes some inconsistencies in certain testimony presented at the hearing, he does not contend that the Board's finding of guilt was against the manifest weight of the evidence. Plaintiff concedes in his appellate brief that "he has some accountability for actions during that early morning call." After reviewing the record on appeal, we conclude that the Board's finding of guilt was not against the manifest weight of the evidence.

As detailed above, ample evidence was introduced during the hearing to show that: (1) plaintiff failed to perform a medical assessment of Briskovic before transporting her to the hospital; (2) plaintiff failed to provide any medical treatment for Briskovic; (3) plaintiff verbally abused Briskovic by cursing at her and by threatening to break her arm; and (4) plaintiff physically abused Briskovic by pulling her hair, twisting her arm behind her back, and pushing her onto a gurney with his hand on her chest and on her neck. In light of this evidence, we conclude that the Board's finding that plaintiff was guilty of the charges alleged was supported by the evidence.

The second step of our analysis is to determine whether the administrative agency's findings of fact provide a sufficient basis for its conclusion that plaintiff should be discharged for cause. Walsh, 96 Ill. 2d at 105. Our supreme court has defined cause for discharge as " 'some substantial shortcoming which renders [the employee's] continuance in his [or her] office or employment in some way detrimental to the discipline and efficiency of the service and something which the law and a sound public opinion recognize as a good cause for his [or her] not longer occupying the place.' " Walsh, 96 Ill. 2d at 105, quoting Fantozzi v. Board of Fire & Police Commissioners, 27 Ill. 2d 357, 360 (1963). The administrative agency, rather than the reviewing court, is in the best position

to determine the effect of the employee's conduct on the department. Valio, 311 Ill. App. 3d at 330. Therefore, an administrative agency's finding of cause for discharge will be overturned only if it is arbitrary and unreasonable or unrelated to the needs of the department. Walsh, 96 Ill. 2d at 105-06.

Plaintiff initially argues that the Board's disciplinary sanction was arbitrary and unreasonable because the instant incident was the first time he was disciplined in over 17 years of employment with the Department. However, Illinois reviewing courts have repeatedly found that a single instance of misconduct can constitute cause for discharge where the misconduct is serious. See Walsh, 96 Ill. 2d at 106-07 (holding that police officer's misconduct in misuse of his gun on a single occasion was sufficiently serious to warrant discharge for cause); Valio, 311 Ill. App. 3d at 331 (finding that a police officer's single instance of lying during a police investigation of his alleged misconduct was sufficient cause for termination); Kappel v. Police Board of the City of Chicago, 220 Ill. App. 3d 580, 592 (1991) (finding that a police officer's single act of possessing and firing an unregistered handgun was sufficient cause for discharge); McHenry v. City of East St. Louis, 210 Ill. App. 3d 861, 869 (1991) (finding that a police officer's single act of allowing a ward of the court to live with him warranted dismissal for cause); Bultas v. Board of Fire & Police Commissioners, 171 Ill. App. 3d 189, 196 (1988) (finding that a police officer's single act of kicking and injuring a detainee was sufficient cause for discharge despite the officer's otherwise "unblemished career").

In the instant case, plaintiff physically and verbally abused Briskovic, a patient who was in physical and emotional distress. He committed these acts while he was charged with Briskovic's care, treatment, and well-being. A paramedic's verbal and physical abuse of a patient is undoubtedly a serious offense. See Bultas, 171 Ill. App. 3d at 196 (reasoning that an officer's physical abuse of a detainee should give rise to dismissal). In considering an appropriate discipline, the Board received

and considered all of the materials in plaintiff's employment file, including his performance reviews, commendations, and letters of appreciation that he received for his work in developing and teaching continuing education courses. The Board could have reasonably concluded that, despite plaintiff's 17 years of commendable service, the severity of his misconduct in this case rendered his continued employment detrimental to the discipline and efficiency of the Department and undermined the public's confidence in the Department. See Bultas, 171 Ill. App. 3d at 196. Given the seriousness of the misconduct, had plaintiff's mitigating evidence been limited only to his previous employment record, we cannot say the Board's decision to discharge for cause would have been arbitrary and unreasonable or unrelated to the needs of the Department. See Walsh, 96 Ill. 2d at 106-07.

However, as noted by plaintiff, this was not the only mitigating evidence introduced at the hearing. Specifically, plaintiff introduced evidence that he may have been suffering from psychiatric conditions at the time of the alleged misconduct. As noted above, following the incident at the Naperville police station, plaintiff admitted himself into a hospital for psychological treatment. Plaintiff remained in the hospital for a week and was diagnosed with bipolar disorder and depression. Relying primarily on Walsh v. Board of Fire & Police Commissioners, 96 Ill. 2d 101 (1983), and Kloss v. Board of Fire & Police Commissioners, 96 Ill. 2d 252 (1983), plaintiff argues that the Board failed to sufficiently consider whether his psychiatric conditions were substantially related to his misconduct. Plaintiff argues that the Board should have made further inquiry into the nature of his psychiatric conditions and should have considered whether his conditions were a cause of his misconduct. Plaintiff argues that, instead, the Board inappropriately used the medical evidence as an aggravating factor to justify its decision to discharge him. The Board counters that it should not be placed in the position of advocating for plaintiff, that plaintiff had the obligation to present

evidence of the causal connection between his psychological conditions and his misconduct, and that he failed to do so. The Board argues its decision to discharge plaintiff was not arbitrary and unreasonable given plaintiff's failure to present it with sufficient evidence.

In Walsh, the plaintiff was a police officer who was terminated after an incident in which he pointed and discharged his gun in close proximity to other people, accidently shooting another person. Walsh, 96 Ill. 2d at 104-05. Prior to this incident, the plaintiff had been diagnosed with psychiatric "problems" and had been placed on a medical suspension pending the treatment of his illness. The plaintiff had also been awarded a medical disability pension. Walsh, 96 Ill. 2d at 103-04. On administrative review of the discharge, our supreme court concluded that the plaintiff's misconduct of recklessly and irresponsibly displaying and using his gun was a serious offense that was "more than enough to warrant the board's decision" to discharge him. Walsh, 96 Ill. 2d at 106-07. Nevertheless, the supreme court remanded the case for a new administrative hearing because the record reflected that the plaintiff was suffering from a psychiatric illness that the administrative agency had not fully investigated. Walsh, 96 Ill. 2d at 108. In so ruling, the supreme court explained:

"[B]ecause the psychiatric evidence presented was so vague and because the board's decision to discharge [plaintiff] for cause may jeopardize his pension rights, we believe that justice and fairness require us to vacate the judgments of the appellate and circuit courts and the order of the board and remand this cause to the board for submission by either party of further evidence that is relevant to the issue of whether [plaintiff's] misconduct was substantially the result of the psychiatric problems that led to his prior medical suspension. If the board finds that the misconduct was substantially related to those problems, the proper

sanction would be other than discharge for 'cause.' " (Emphasis added.) Walsh, 96 Ill. 2d at 108.

In Kloss, the plaintiff police officer was discharged after an incident in which he threatened to shoot and kill a superior officer. Kloss, 96 Ill. 2d at 254-55. The evidence presented at the disciplinary hearing established that, during the incident, the plaintiff vacillated between periods of lucidity and irrationality. Kloss, 96 Ill. 2d at 255-56. The evidence further established that the plaintiff's behavior could be attributed to a reaction that he had after combining his prescription medications with alcohol. Kloss, 96 Ill. 2d at 256-57. Although the supreme court noted that the plaintiff's misconduct was sufficiently serious to warrant discharge, it nonetheless remanded the case for additional proceedings to determine whether the plaintiff's conduct was the result of an inadvertently induced adverse reaction to his medication. Kloss, 96 Ill. 2d at 258-59. The supreme court explained that, "In view of plaintiff's otherwise unblemished record, it was unreasonable for the board to discharge him without availing itself of the opportunity to examine in greater detail the medically related aspects of the basis for his discharge." Kloss, 96 Ill. 2d at 259.

The rationale of Walsh and Kloss establishes that discharge for cause is inappropriate where the employee's alleged misconduct was substantially related to or caused by a psychiatric condition. Walsh, 96 Ill. 2d at 108; Kloss, 96 Ill. 2d at 259. In both Walsh and Kloss, the administrative agencies were presented with evidence that the employees were suffering from psychiatric conditions at the time the alleged misconduct occurred. Walsh, 96 Ill. 2d at 108; Kloss, 96 Ill. 2d at 258-59. In each case, the supreme court found that the administrative agency failed to make a determination as to whether the misconduct was substantially related to or caused by the psychiatric condition. Walsh, 96 Ill. 2d at 108; Kloss, 96 Ill. 2d at 259. In such circumstances, the supreme court held that

justice and fairness required a remand of the case for additional proceedings to determine whether the misconduct was "substantially the result of the psychiatric problems." Walsh, 96 Ill. 2d at 108. The supreme court instructed that, if on remand the administrative agency found that the misconduct was substantially the result of the psychiatric condition, the proper sanction would be other than discharge for cause. Walsh, 96 Ill. 2d at 108; Kloss, 96 Ill. 2d at 259.

The Board attempts to distinguish Walsh and Kloss. The Board distinguishes Walsh on the ground that prior to the misconduct that supported the disciplinary complaint in Walsh, the department had known of the plaintiff's recurring medical problems and had suspended him on that basis. The Board argues that, in contrast to Walsh, in this case there was no knowledge of the alleged mental infirmity prior to the misconduct. However, the Board does not explain why such a distinction dictates a different outcome or a departure from supreme court precedent. The issue in Walsh and in the instant case is the same: whether the medical condition was the cause of the misconduct.

The Board distinguishes Kloss on the ground that the officer's actions in that case were induced by an adverse reaction to medication and there was testimony regarding the reaction, which mitigated the officer's conduct. The Board argues that, in the instant case, there was no testimony about any medical or mental condition mitigating plaintiff's conduct toward Briskovic. As explained below, this contention is unfounded, as plaintiff did present some evidence of a psychiatric condition that may have been related to his conduct. As such, we do not find Kloss distinguishable on this basis.

In the instant case, as in Walsh and Kloss, the Board was presented with some evidence that plaintiff was suffering from psychiatric conditions at the time of the incident with Briskovic. As

detailed above, plaintiff presented the Board with copies of medical records from his hospitalization following the incident. These documents reflect that plaintiff had suffered from depression for more than two years and that he had been prescribed medication to treat the condition. These documents also reflect that plaintiff was discharged from the hospital with diagnoses of depression and bipolar disorder. Plaintiff's treatment plan, both during and after his hospitalization, required attendance at therapy sessions and included medications such as Trazodone, Risperdal, Depakote, and an increased dosage of Paxil. Plaintiff also introduced letters and forms completed by his treating physician indicating plaintiff's need for a medical leave of absence due to his illnesses.

Despite the presence of evidence reflecting that plaintiff was suffering from psychiatric conditions at the time of his misconduct, the record reflects that the Board failed to make any determination as to whether the misconduct was the substantial result of his psychiatric illnesses. In fact, the only reference the Board made to plaintiff's medical evidence was to note that plaintiff had a history of "explosive behavior" as a further justification for discharge.

In light of plaintiff's otherwise unblemished employment record and the medical evidence presented, we conclude that it was unreasonable for the Board to have discharged plaintiff for cause without having made a specific finding as to whether plaintiff's-illnesses were substantially related to his misconduct. See Walsh, 96 Ill. 2d at 108; Kloss, 96 Ill. 2d at 259-60. We recognize, however, that as in Walsh, the medical evidence introduced at the disciplinary hearing was insufficiently developed, in that plaintiff did not present evidence regarding the causal connection between his psychiatric conditions and his misconduct, to support any factual determination as to the existence of a causal connection. Accordingly, we conclude that a remand of this case for additional proceedings is necessary. See Walsh, 96 Ill. 2d at 108 (remand "for submission by either party of

further evidence"); Kloss, 96 Ill. 2d at 259 (remand so the board could "avail[] itself of the opportunity to examine in greater detail the medically related aspects" of the basis for discharge). Contrary to the Board's contention, we do not place it in the position of "advocating" for plaintiff, as we recognize the Board's proper role in these proceedings is to act as the impartial finder of fact. See Launius v. Board of Fire & Police Commissioners, 151 Ill. 2d 419, 427 (1992). Rather, we conclude that a remand of this case is necessary because the Board did not make the required finding, per Walsh and Kloss, regarding whether plaintiff's psychological conditions were substantially related to his misconduct. Walsh, 96 Ill. 2d at 108; Kloss, 96 Ill. 2d at 259-60.

On remand, the Board shall determine whether plaintiff's misconduct on September 19, 2004, was substantially related to any psychiatric condition from which he was suffering at that time. In abiding by this mandate, the Board may, in its discretion, reopen the proofs so that either or both parties may introduce medical evidence to allow the Board to make its determination. See Kloss, 96 Ill. 2d at 259. In the event that the Board determines plaintiff's misconduct was substantially related to a psychiatric condition, it shall be the obligation of the Board to fashion a disciplinary sanction consistent with the fairness and justice goals enunciated in Walsh, 96 Ill. 2d at 108.

Plaintiff's second contention is that the Board violated the provisions of the ADA (42 U.S.C. §12101 et seq. (2000)) when it discharged him. The ADA prohibits certain employers from discriminating against individuals with disabilities. See 42 U.S.C. §12112(a) (2000). Plaintiff argues that his psychiatric illnesses qualify him as a disabled person and entitle him to protection under the ADA. We need not address the merits of this contention, because the issue is not properly before us. The record reflects that the applicability of the ADA was never pleaded or raised during the administrative hearing. The United States Supreme Court has held that individuals invoke the

protections of the ADA by initiating private causes of action. See Barnes v. Gorman, 536 U.S. 181, 184-85, 153 L. Ed. 2d 230, 235, 122 S. Ct. 2097, 2099-2100 (2002). The instant litigation does not arise from a cause of action filed to enforce the provisions of the ADA. Instead, this case is an administrative proceeding initiated by the Department seeking to discharge plaintiff for cause. The scope of our review on appeal is therefore limited to a consideration of whether the Board's decision to discharge plaintiff was arbitrary and unreasonable or unrelated to the needs of the Department. See Walsh, 96 Ill. 2d at 105-06. As plaintiff has not initiated a cause of action alleging a violation of the ADA, we need not determine whether the Board's decision to discharge plaintiff violated the protections accorded under that act, and we decline to consider that issue.

Plaintiff's final contention on appeal is that he was denied a fair hearing when the City failed to timely tender its discovery responses. Specifically, plaintiff argues that he did not receive a copy of the transcript of his administrative interrogation prior to the commencement of the disciplinary hearing. A review of the record reveals that, although plaintiff objected to the admission of the transcript on the basis that the document contained hearsay, at no time during the disciplinary hearing did plaintiff object to the timeliness of the City's disclosure of the transcript or its other discovery responses. Although the trial court considered the merits of this issue, we decline to do so, as we find that plaintiff has waived this issue as a result of his failure to object at the time of the disciplinary hearing. National City Bank of Michigan/Illinois v. Property Tax Appeal Board, 331 Ill. App. 3d 1038, 1044 (2002) (holding that an argument or objection not raised in an administrative hearing is waived and may not be raised for the first time on administrative review).

For the foregoing reasons, we reverse the circuit court's judgment affirming the Board's decision to discharge plaintiff for cause and we remand this case to the Board for further proceedings consistent with the views expressed herein.

Reversed and remanded.

CALLUM and GILLERAN JOHNSON, JJ., concur.