JAY CARTWRIGHT, as Special Representative of the Estate of Mary K. Cartwright, Deceased, Plaintiff-Appellee and Cross-Appellant, v. C. TUCKER MOORE, as Trustee of the Bethine W. Alberding 1989 Trust, Defendant-Appellant and Cross-Appellee.

First District (1st Division)   No. 1—07—1651

Opinion filed August 10, 2009.—Rehearing denied September 2, 2009.

2

GORDON, ROBERT E., P.J., dissenting.

Michael T. Reagan, of Herbolsheimer, Lannon, Henson, Duncan & Reagan, P.C., of Ottawa, and Paul F. Schofield and John M. Varde, both of Schofield & Varde, LLP, of Chicago, for appellant.

Robert S. Held and George N. Vurdelja, Jr., both of Harrison & Held, LLP, of Chicago, for appellee.

JUSTICE GARCIA delivered the opinion of the court:

This appeal and cross-appeal arise from a suit filed by Mary K. Cartwright, one of three daughters of Bethine W. Alberding and one of three beneficiaries of Alberding's 1989 trust (Alberding trust), against C. Tucker Moore, the named trustee. In her third amended complaint, Cartwright alleged, among other claims, that Moore wasted trust assets by refusing to distribute the stock in the Occidental Hotel Company (Occidental) to the beneficiaries upon Alberding's death as directed by the Alberding trust. The complaint also alleged that Moore sold another trust asset, Alberding's former residence, at substantially less than market value, without the beneficiaries' approval. The complaint sought reimbursement from Moore for any compensation received as trustee and for the legal fees paid by the trust on behalf of Moore, based on a claim that he breached his fiduciary duty.

While litigation was ongoing, Cartwright joined a lawsuit filed by her co-beneficiary and sister Beth Ann Mohr (Mohr suit) against trustee Moore, which came to a conclusion before this case, the Cartwright suit. The Mohr suit, which was filed subsequent to the Cartwright suit, sought injunctive relief against Moore plus an award for damages. On February 17, 2005, judgment was entered in the Mohr suit on the injunctive claim. The court dismissed the damages claim without prejudice. The court's order included Supreme Court Rule 304(a) (210 Ill. 2d R. 304(a)) language to provide for an immediate appeal. On December 21, 2007, Mohr refiled her damages claim in a verified complaint. On November 25, 2008, Judge Dennis D. Burke granted trustee Moore's motion to dismiss Mohr's verified complaint as barred by *res judicata*. Judge Burke rejected Mohr's contention that the release signed by the parties, pursuant to the 2005 judgment, permitted her to split her claim against trustee Moore. No appeal from Judge Burke's order was filed.

On November 15, 2005, trustee Moore filed an "Amended Answer and Affirmative Defenses" to Cartwright's third verified complaint, in

which Moore raised the affirmative defense of *res judicata* based on the final judgment entered in the Mohr suit. Cartwright filed answers to Moore's affirmative defenses in which she contended *res judicata* had a limited affect on her suit.

> "[Cartwright] admits that the judgment in [the Mohr suit] does in fact bar certain elements of this case based upon the Doctrine of *Res Judicata*, since the claims involving any delay in distribution and failure to distribute the assets of the Trust have already been adjudicated by final judgment. However, [Cartwright] denies that [Moore] has accurately set forth the impact of the final judgment since the impact would be a finding of liability in favor of [Cartwright]."

On November 28, 2006, Judge David R. Donnersberger entered a surcharge judgment of $1.9 million in favor of Cartwright and against trustee Moore, plus prejudgment interest, on Cartwright's claim regarding Occidental, and a surcharge judgment of $135,000 regarding the sale of Alberding's personal residence. In postjudgment proceedings, following Judge Donnersberger's retirement, Judge Mary Ann Mason vacated the surcharge against trustee Moore regarding the sale of the residential property, but granted trustee Moore no further relief.

Moore appeals from the $1.9 million judgment. Cartwright cross-appeals the order vacating the surcharge regarding the sale of the residential property and the denial of her other claims.

We conclude that the order entered in the Mohr suit, which predated the Cartwright suit judgment, triggered *res judicata*, barring Cartwright from recovery in this case. We therefore vacate the circuit court's surcharge of $1.9 million, plus the corresponding award of interest. We affirm the circuit court's judgment in all other respects.

## BACKGROUND

In 1989, Bethine Alberding created the trust naming her three daughters—Cartwright, Mohr, and Melissa A. Moore—as beneficiaries and her son-in-law C. Tucker Moore as the Trustee. The trust's terms required C. Tucker Moore to "distribute the trust estate, as then constituted," to the beneficiaries upon Alberding's death. The trust also granted Moore the power to "make full distribution or division of the trust in cash or in kind or in both."

When Alberding died on December 23, 1993, the trust's assets included approximately 50 commercial properties across the country. Nearly all of the properties were owned by closely held corporations whose stock was also held by the trust. The various corporations in the trust made a series of loans to each other during Alberding's lifetime, creating a complex web of debts. The parties do not contest that Moore was required to begin closing out the estate in May 1997,

when the Internal Revenue Service (IRS) issued a closing letter, indicating that the trust's estate taxes had been paid.

The trust's corpus included the Occidental stock. Occidental's only asset was the Captain Bartlett Inn, located in Fairbanks, Alaska. Although the Captain Bartlett was appraised at $8 million near the time of Alberding's death, it was not producing cash flow and had more than $3 million in long-term debt. While Moore distributed most of the trust's assets in a timely fashion, he did not distribute Occidental's stock. The Captain Bartlett's value began to decline sharply. When Moore attempted to sell the hotel in 2004, he could only secure a purchase offer of $3.8 million. The sale was not completed because Cartwright objected.

Another asset in the trust was Alberding's former home. In a letter dated May 15, 1997, Moore informed the beneficiaries that he would sell Alberding's home at the earliest opportunity. None of the beneficiaries responded to the letter. Moore sold Alberding's home in June 1998 for $690,000.

### The Cartwright Suit

Cartwright filed this suit in 2000 and filed a third amended complaint on March 14, 2002. In count I of her third amended complaint, Cartwright alleged that Moore breached his duty of loyalty by collecting a salary from many of the trust's closely held corporations and exacting excessive trustee fees, and sought recovery of that compensation. In count II, Cartwright alleged that Moore wasted the trust's assets in violation of its terms by refusing to immediately distribute them upon Alberding's death. Count II included allegations that Moore refused to distribute the Occidental stock or sell the Captain Bartlett upon Alberding's death, allowing those assets to decline in value. Count II further alleged that Moore sold Alberding's home without the beneficiaries' approval for substantially less than its fair market value. Cartwright alleged that Moore's actions constituted a breach of his fiduciary duty, which entitled her to recoup any legal fees collected by Moore's attorneys from the trust in connection with the defense of this suit. When Cartwright died in 2003, her son Jay Cartwright was substituted as plaintiff as a special representative of her estate.

### The Mohr Suit

While the Cartwright suit was pending, beneficiary Beth Ann Mohr filed a two-count complaint against Moore on October 11, 2001. In count I of her amended complaint, Mohr alleged that Moore breached the trust's terms by failing to distribute the trust's assets "as then constituted" upon Alberding's death and sought a mandatory injunc-

tion directing Moore to distribute the assets, including specifically the Occidental stock. In count II, Mohr alleged that Moore breached his fiduciary duty to exercise reasonable business acumen by failing to renegotiate the interest rate on the Captain Bartlett's mortgage, causing damages. Sometime in late 2004, Cartwright joined the Mohr suit as a coplaintiff and from that point forward fully participated in the litigation.

On February 17, 2005, a judgment order was entered in the Mohr suit, directing Moore to distribute the trust's assets, including the Occidental stock, to the beneficiaries. The order also granted Mohr's oral motion to dismiss without prejudice count II, the breach of fiduciary duty claim for which damages were sought. Additionally, in its order, the court retained jurisdiction to adjudicate "the remainder of relief sought by the plaintiff Mohr *** including specifically her request that the Trustee C. Tucker Moore and his attorneys be barred from reimbursement of attorneys' fees, costs and expenses." The order contained a Supreme Court Rule 304(a) finding that there was no just cause for delay in an appeal. See 210 Ill. 2d R. 304(a). Moore distributed the shares of Occidental in March 2005.

On December 29, 2006, an agreed settlement order was entered in the Mohr suit settling the amount of legal fees to be paid from the Alberding trust's assets to the parties' attorneys. The settlement order, while not included in the record, is attached to Cartwright's cross-appeal reply brief, which we take judicial notice of because it "fall[s] within the category of readily verifiable facts 'which are capable of "instant and unquestionable demonstration." ' [Citation.]" *Hermesdorf v. Wu*, 372 Ill. App. 3d 842, 850, 867 N.E.2d 34 (2007). In successive paragraphs in the settlement order, the parties, including Cartwright, mutually released each other from any obligations arising from the Mohr suit "but excluding the claims asserted in Count II" (paragraph 11) and excluding "any liabilities or claims arising out of or in connection with the [Cartwright suit]" (paragraph 12).

## Judgment in the Cartwright Suit

Although Moore raised *res judicata* arguments based on the Mohr suit in his amended answer to Cartwright's third amended complaint, and in a later motion for a directed finding, the circuit court proceeded to judgment on the merits. On November 28, 2006—nearly two years after the Mohr court found that trustee Moore was required to distribute the trust's assets in its February 17, 2005, order—the circuit court in the Cartwright suit entered a judgment order also finding that Moore was required to distribute the trust's assets, an obligation triggered by a May 1997 IRS closing letter indicating that the trust's

estate taxes had been paid. For his failure to distribute the Occidental stock, the court found Moore liable for a surcharge of $1.9 million. The surcharge was based upon the decline in value of the Captain Bartlett from $5.7 million, as measured by the appraisal nearest in time to the IRS closing letter, to $3.8 million, the amount of the 2004 purchase offer. The circuit court also found Moore liable for a surcharge of $135,000 for his "unauthorized distribution" of Alberding's home, the difference between the sale price and an expert opinion of its fair market value. The circuit court awarded prejudgment interest to Cartwright on both awards. The court denied Cartwright's claims seeking reimbursement of the salary and legal fees paid to Moore and his attorneys from the trust.

Moore filed a posttrial motion to vacate the judgment. On June 14, 2007, the circuit court modified its November 28, 2006, order and vacated the surcharge based on the sale of Alberding's home. However, the circuit court upheld the $1.9 million Captain Bartlett award plus prejudgment interest. Moore timely appeals; Cartwright timely cross-appeals.

## ANALYSIS

### Moore's Appeal

In his appeal, Moore asserts a number of challenges to the surcharge judgment entered against him. His first contention is that the judgment order entered in the Mohr suit on February 17, 2005, bars subsequent litigation between the same parties on res judicata grounds. If res judicata was triggered by the Mohr judgment, then the judgment order in this case of November 28, 2006, was barred. We agree. Because we find this dispositive of all issues Moore raises on appeal, we address this issue only.

Under the doctrine of res judicata, "a final judgment on the merits by a court of competent jurisdiction acts as a bar to a subsequent suit between the parties involving the same cause of action." River Park, Inc. v. City of Highland Park, 184 Ill. 2d 290, 302, 703 N.E.2d 883 (1998). "Res judicata promotes judicial economy by requiring parties to litigate in one case all claims arising out of the same group of operative facts. [Citation.] The doctrine applies to not only what was decided in the first actions, but also 'those matters that could have been decided in that suit.' " Mann v. Rowland, 342 Ill. App. 3d 827, 834, 795 N.E.2d 924 (2003), quoting River Park, Inc., 184 Ill. 2d at 302.

Three requirements must be met to trigger res judicata: (1) a final judgment on the merits rendered by a court of competent jurisdiction; (2) an identity of parties or their privies; and (3) an identity of cause of action. River Park, Inc., 184 Ill. 2d at 302. While River Park,

*Inc.* speaks in terms of a bar to a "subsequent suit between the parties" (184 Ill. 2d at 302), Cartwright does not dispute that her pending suit at the time is the equivalent of a "subsequent suit." Nor can a credible argument be made for a contrary position because the controlling issue is whether the two causes of action are the same for *res judicata* purposes. For that determination, we look to whether the three requirements of the doctrine of *res judicata* have been satisfied. See *Schnitzer v. O'Connor*, 274 Ill. App. 3d 314, 323, 653 N.E.2d 825 (1995) (shareholder derivative suit barred by earlier shareholder derivative suit against the same defendants alleging the same breach of duties; petition seeking to vacate dismissal of second suit did not allege meritorious claim where first suit, pending on appeal, "acted as *res judicata* as to the plaintiff's complaint").

### *Res Judicata* Requirements

The obvious being recognized, the parties do not dispute that the third requirement of *res judicata*, identity of the parties, has been met in this case.

Given that there is identity of the parties and in light of the nature of the complaints filed by sisters and co-beneficiaries of the Alberding trust against trustee Moore, each contesting the manner in which he carried out his duties as trustee, it would seem difficult, if not impossible, to avoid a conclusion that the second requirement of *res judicata* has also been met. Nonetheless, Cartwright contends, according to her brief, that "the claims and relief sought do not arise out of the same operative facts."

Rather than address how the operative facts differ that gave rise to the two complaints, Cartwright asserts in her brief "the damage claim [voluntarily dismissed] in Mohr related only to the damages arising out of the trustee's breach of fiduciary duty with respect to one specific asset in the trust, whereas the damages claim in the [Cartwright] case is based on the damages caused by the failure of the trustee to distribute all assets in the trust, which were substantially greater than the one asset at issue in the Mohr proceeding."

While the claims and relief sought in each suit may have differed in scope, we find no credible basis for Cartwright to carve out a distinct and independent cause of action given the central contention that the Cartwright and Mohr suits necessarily shared: trustee Moore's alleged mishandling of the Alberding trust. "A cause of action consists of a single group of facts giving the plaintiff a right to seek redress for a wrongful act or omission of the defendant. [Citation.] Although a single group of operative facts may give rise to the assertion of more than one kind of relief or more than one theory of recovery, assertions

of different kinds or theories of relief arising out of a single group of operative facts constitute but a single cause of action. [Citation.]" *Torcasso v. Standard Outdoor Sales, Inc.*, 157 Ill. 2d 484, 490-91, 626 N.E.2d 225 (1993). That the second requirement has been met here is beyond question.

Finally, according to Cartwright, the first requirement of a final judgment on the merits cannot be shown because the date and language in the Mohr judgment preclude such a finding. As made clear at oral argument by counsel for Cartwright, because the damages claim set out in count II in the Mohr suit was voluntarily dismissed without prejudice in the order of February 17, 2005, granting injunctive relief to Mohr and Cartwright, and that order left unresolved the issue of "reimbursement of attorneys' fees, costs and expenses incurred in defending this action," it necessarily follows that "there was never a final judgment on the damages claim in Mohr." According to Cartwright, "those claims were still pending as of the date of the judgment on the instant 2000 Cartwright case [when it] was entered [on November 28, 2006]." Once again, we reject Cartwright's position.

There is no "race to judgment" consideration to preclude a finding of a "final judgment on the merits" in assessing the first requirement of *res judicata*. This is so because the reach of *res judicata* extends not only to the claims that were adjudicated, but to " 'those matters that could have been decided in that suit.' " *Mann*, 342 Ill. App. 3d at 834, quoting *River Park, Inc.*, 184 Ill. 2d at 302. We understand Cartwright to concede as much in her answer to trustee Moore's affirmative defense of *res judicata*: "[Cartwright] admits that the judgment in [the Mohr suit] does in fact bar certain elements of this case based upon the Doctrine of *Res Judicata*, since the claims involving any delay in distribution and failure to distribute the assets of the Trust have already been adjudicated by final judgment."

■ The Cartwright suit began a year before the Mohr suit was filed. Each sister's suit, seeking to enforce the terms of trust, would necessarily impact the other beneficiaries. The benefit to Cartwright that would flow from a successful prosecution of the Mohr suit became a matter of her own control when she intervened in Mohr's suit as co-plaintiff. Once Cartwright became a plaintiff in Mohr's suit, *res judicata* compelled Cartwright, no less so than Mohr herself, to litigate all her claims against trustee Moore in that same suit.[1] *"Res judicata* *** requir[es] parties to litigate in one case all claims arising out of the same group of operative facts." *Mann*, 342 Ill. App. 3d at 834.

---

[1]When Cartwright joined Mohr in her suit, it would appear the Cartwright suit was subject to dismissal under section 2—619(3) of the Code of

We have already determined that the Mohr suit and the Cartwright suit shared the same group of operative facts. We are presented with no authority that supports the proposition that the unresolved damages count in the Mohr suit allows Cartwright to avoid the third requirement, "final judgment on the merits," on the reasoning that a judgment order is not rendered "final" because the plaintiff chooses to voluntarily dismiss a count, while a final judgment is entered on another count. We read our supreme court's decision in *Rein* barring "a litigant from splitting a single cause of action into more than one proceeding," to apply whether the litigation be successive or concurrent. *Rein v. David A. Noyes & Co.*, 172 Ill. 2d 325, 339, 665 N.E.2d 1199 (1996).

We discern no difference between a plaintiff attempting to split his claims into separate suits to be adjudged in succession, and an intervening plaintiff, proceeding to judgment on coplaintiff's count of choice while voluntarily dismissing the remaining count, seeking to avoid the *res judicata* bar based on a claim that the settled suit left certain claims unresolved. We conclude a party is prohibited from pursuing still-pending litigation, when earlier litigation and the still-pending litigation constitute, for purposes of *res judicata*, the same cause of action. *Rein*, 172 Ill. 2d at 339. The first requirement for *res judicata* has also been met here.

### Exceptions to *Res Judicata*

That the February 17, 2005, judgment order entered in the Mohr suit meets all three requirements for *res judicata* application does not end our analysis. Cartwright contends the doctrine of *res judicata* may be avoided here based on two of the six exceptions to *res judicata* noted by our supreme court in *Rein*.

"[T]he rule against claim-splitting does not apply to bar an independent claim of part of the same cause of action if: (1) the parties have agreed in terms or in effect that plaintiff may split his claim or the defendant has acquiesced therein; and (2) the court in the first action expressly reserved the plaintiff's right to maintain the second action ***." *Rein*, 172 Ill. 2d at 341, citing Restatement (Second) of Judgments §26 (1980).

Cartwright contends the first exception is satisfied because "the parties in the Mohr case specifically agreed that the damages claims in that matter were being dismissed without prejudice and that that agreement in the Mohr matter had no effect on the claims in the Cart-

Civil Procedure. 735 ILCS 5/2—619(3) (West 2002) ("another action pending between the same parties for the same cause"). Because neither party informs us how this section might impact the issue before us, we offer nothing further.

wright matter." The voluntary dismissal of count II of Mohr's complaint was addressed in three court orders below: the February 17, 2005, judgment order granting injunctive relief; the December 29, 2006, settlement order on attorney fees; and the November 25, 2008, order granting a motion to dismiss Mohr's complaint of count II. Of the three orders, we find the order of February 2005 controls the effective date of the voluntary dismissal of count II, as confirmed by Judge Burke's order of November 2008.

We reject Cartwright's contention that the first exception has been satisfied here based on a succinct statement in the order of February 17, 2005: "Mohr's oral motion to dismiss Count II of the plaintiff's Amended Verified Complaint without prejudice is granted and said count is hereby dismissed." Mohr's oral motion also binds Cartwright as coplaintiff in the Mohr suit. We reject Cartwright's contention that this statement regarding an "oral motion" may be read to reflect an agreement by the parties to allow Cartwright to pursue "claim-splitting," either expressly or effectively, so as to satisfy the first exception set forth in *Rein*. See *Rein*, 172 Ill. 2d at 342 (exception to *res judicata* did not apply where defendants did not stipulate or agree to plaintiffs' refiling of the voluntarily dismissed count).

Our conclusion that the order of February 2005 precludes a finding that the first exception in *Rein* applies here is consistent with the order entered by Judge Burke on November 25, 2008, in which he granted Moore's "Motion to Dismiss the Verified Complaint *** with prejudice." Judge Burke entered his ruling based on the February 17, 2005, order entered by Judge Donnersberger. No appeal was filed to contest Judge Burke's ruling. The ruling is binding on the parties.

We apply the same reasoning, with only a few more comments, to reject Cartwright's claim that the second exception applies here. Cartwright contends that we should read the order of December 29, 2006, as reserving "the plaintiff's right to maintain the second action, because the December 2006 order in Mohr expressly dismissed Count II without prejudice and expressly excluded the Cartwright case from any effect of releases or agreement in settlement of the Mohr matter."

While the December 2006 order repeats what was stated in the February 2005 judgment order, we attach no legal significance to the repetition. Nor does Cartwright tell us why we should; she simply concludes that we should. Trustee Moore urged upon the circuit court below, in his amended answer and his motion for a directed finding, that the February 2005 judgment entered in the Mohr litigation had *res judicata* effect on the Cartwright litigation. Judge Donnersberger rejected the affirmative defense of *res judicata* and entered the surcharge judgments against Moore on November 26, 2006. We reject

as simply outside the bounds of reasonable interpretation of the record that trustee Moore, within a month after suffering defeat in the Cartwright litigation, would in a December 2006 order make for naught all of his efforts to bar the Cartwright litigation based on *res judicata* by the mere mention of the Cartwright suit in a release entered in the Mohr suit. See *Rein*, 172 Ill. 2d at 342 ("trial judge's granting plaintiff's motion to voluntarily dismiss the common law counts without prejudice under section 2—1009 should not be interpreted as immunizing plaintiffs against defenses defendant may raise when the voluntarily dismissed counts were refiled"). We find no basis to conclude that the December 2006 order judicially reserved Cartwright's right to maintain her separate litigation, which ended on November 26, 2006, under the second exception listed in *Rein*. Whether *"nunc pro tunc"* language in the December 2006 order would control, no such language was included in the order.

Because we find *res judicata* to have foreclosed Cartwright's litigation that was pending at the time the final order of judgment was entered in favor of her and her sister in the Mohr litigation, we vacate the surcharge of $1.9 million plus prejudgment interest against trustee Moore. In light of our holding, we find no need to address Moore's other contentions.

### Cartwright's Cross-Appeal

Based on our analysis above, we need say little to explain our conclusion that the claims Cartwright's cross-appeal raises, based on litigation that postdated the final judgment entered in the Mohr litigation, are also foreclosed by *res judicata*. Cartwright does not argue in her brief that her claims on cross-appeal may stand should we find against her on the *res judicata* issue. We affirm the circuit court's rejection of Cartwright's claims.

■ We briefly address Cartwright's claim attacking the fees paid to Moore's attorneys from the trust because a separate basis is present to reject the claim. In addition to *res judicata*, the state of the record also bars her success on this portion of her breach of fiduciary duty claim. "[T]he costs of litigation to construe a trust" are generally paid from the trust estate, and are limited only where the trustee breaches his fiduciary duty "to administer the trust according to its terms." *Northern Trust Co. v. Heuer*, 202 Ill. App. 3d 1066, 1071, 560 N.E.2d 961 (1990). Despite Cartwright's pursuit of this issue on appeal, nowhere in the record is there an express finding by the circuit court that Moore breached his fiduciary duties in administering the trust so as to warrant reimbursement of attorney fees paid. Thus, the state of the record provides an independent basis to bar Cartwright from recouping legal fees paid to Moore's attorneys.

Because the circuit court did not abuse its discretion in denying Cartwright's claim to these fees, we affirm its ruling. *Heuer*, 202 Ill. App. 3d at 1071 (reviewing determination of amount of attorney fees paid from a trust for an abuse of discretion).

## CONCLUSION

*Res judicata* foreclosed litigation in the Cartwright suit that postdated the final judgment entered in the Mohr litigation where the record is clear that the three requirements of *res judicata* have been met. No exception to the application of the *res judicata* doctrine applies on the record before us. The surcharge judgment against trustee Moore was wrongly entered and is vacated. *Res judicata* also forecloses consideration of Cartwright's cross-appeal.

Affirmed in part and vacated in part.

WOLFSON, J., concurs.

PRESIDING JUSTICE ROBERT E. GORDON, dissenting:

I respectfully dissent. This case is not particularly difficult. Our supreme court already decided this issue. As the majority notes, our supreme court has held:

"[T]he rule against claim-splitting does not apply to bar an independent claim of part of the same cause of action if: (1) the parties have agreed in terms or in effect that plaintiff may split his claim or the defendant has acquiesced therein; (2) the court in the first action expressly reserved the plaintiff's right to maintain the second action \*\*\*." *Rein v. David A. Noyes & Co.*, 172 Ill. 2d 325, 341 (1996).

Both of these provisions apply to the facts here.

On February 17, 2005, the trial court granted Mohr's oral motion to dismiss *without prejudice* count II, the breach of fiduciary duty claim for which damages were sought. On December 29, 2006, an agreed settlement order was entered in the Mohr suit, in which all the parties mutually released each other from any obligations arising out of the Mohr suit, but in which they specifically excluded "the claims asserted in Count II" (paragraph 11) and "any liabilities or claims arising out or in connection with the [Cartwright] suit" (paragraph 12).

Both these orders prove that (1) the parties "agreed \*\*\* in effect that plaintiffs [could] split [their] claim" by dismissing count II without prejudice and by specifically excluding it from the agreed settlement order; and (2) the trial "court in the first action expressly reserved the plaintiff's right to maintain the second action," by the

order that dismissed it without prejudice and by the settlement order that excluded it. *Rein*, 172 Ill. 2d at 341.

Thus, applying the words of the exception to the facts of our case shows that both exceptions are satisfied.

The majority finds that the trial court's dismissal order of February 17, 2005, does not satisfy the first exception because the order did not explicitly reflect an agreement by the parties. Even if that were true, then the parties' subsequent settlement agreement certainly does reflect an agreement by the parties.

The majority finds that the settlement order of December 29, 2006, does not satisfy the second exception, because it merely repeated what was in the prior dismissal order of February 17, 2005. However, by itself, the trial court's February 17 order dismissing count II without prejudice shows that the trial court "expressly reserved" plaintiff's right to bring this claim in a second action. *Rein*, 172 Ill. 2d at 341.

The majority observes that the trustee argued in the Cartwright suit that the February 17, 2005, order in the Mohr suit should be given *res judicata* effect, and that he lost on that argument on November 28, 2006, when the Cartwright court entered judgment against him. The majority states: "We reject as simply outside the bounds of reasonable interpretation of the record that trustee Moore, within a month [November 28, 2006,] after suffering defeat [of his affirmative defense of *res judicata*] in the Cartwright litigation, would in a December 2006 order make for naught all of his efforts to bar the Cartwright litigation" on *res judicata* grounds. 394 Ill. App. 3d at 10-11. Actually, it makes perfect sense. Finding that this was a losing argument, he decided to relinquish it for a settlement on other issues. In any event, whether we as Monday-night quarterbacks find that it was or was not his most sensible move, the document speaks for itself, and that is exactly what it states, in explicit terms. It states all claims are settled "but excluding the claims asserted in Count II" and excluding "any liabilities or claims arising out of or in connection with the [Cartwright suit]."

The majority states that its conclusion is consistent with the order entered by Judge Dennis Burke. On December 21, 2007, Mohr refiled her claim, and on November 25, 2008, Judge Burke found that the refiled complaint was barred by *res judicata*. Mohr did not appeal Judge Burke's order. First, Cartwright was not a party to that action. Second, if Judge Burke's order in Mohr's suit is entitled to preclusive effect in Cartwright's suit, then the earlier 2006 order by the Cartwright court, which found that the claims were *not* barred by *res judicata*, should have had preclusive effect in Mohr's suit.

14

For the foregoing reasons, I must respectfully dissent. Two exceptions to the *res judicata* doctrine apply, and thus *res judicata* does not bar the suit.